747 A.2d 759

Jaime Sylvester HAWKINS

v.

STATE of Maryland.

No. 7013, Sept. Term, 1998.

Court of Special Appeals of Maryland.

March 8, 2000.

Mark Colvin, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

M. Jennifer Landis, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Robert Dean, State's Attorney for Montgomery County, Rockville, on the brief), for appellee.

Submitted before DAVIS, SALMON and ROBERT F. FISCHER, (Ret., Specially Assigned), JJ.

SALMON, Judge.

Appellant, Jaime Sylvester Hawkins, was convicted by a jury sitting in the Circuit Court for Montgomery County of four counts of distribution of cocaine.[1] Two questions are presented on appeal:

---

1. The court sentenced appellant as follows: Count 1—twenty years of imprisonment, of which ten years was suspended and the remaining ten years was to be served without the possibility of parole; Count 2—a consecutive twenty-year sentence, all but five years suspended; Count 3—a consecutive twenty-year sentence all but two years suspended; and Count 4—a consecutive twenty-year sentence, all suspended. Upon his release from prison, appellant was to serve five years of probation.

1. Did the court err in failing to comply with Maryland Rule 4–215(e) regarding appellant's request to discharge counsel?

2. Did the court err in failing to grant appellant's motion to sever the four charges filed against him?

## FACTS

Detective Keith Mathis of the Montgomery County Police Department, working undercover, bought crack cocaine from appellant on four occasions over a six-week period.[2] Each of the transactions took place in the College Plaza Shopping Center parking lot in Rockville, Maryland. On each occasion, the detective drove to the parking lot and, upon parking his car next to appellant's, either the detective or appellant exited his respective car and got into the other's car. Once in a car, the detective gave appellant money and appellant handed cocaine to the detective. The detective was wired on each occasion, and the conversations between the two men were recorded. In addition, a police officer using binoculars watched the meetings from a location across the parking lot.

Upon appellant's arrest on March 27, the police seized a pager, $566 from his pants pocket, and $800 from his shoe. At trial, even though appellant did not testify, his defense was entrapment. Defense counsel argued that on each of the four occasions Detective Mathis had initiated contact with his client.

## DISCUSSION

### I.

Appellant argues on appeal that the lower court erred in failing to comply with Maryland Rule 4–215(e) regarding his

---

**2.** The dates of the four transactions, the price paid, and the amount of crack cocaine bought were as follows: January 14, 1998, $250 for 3.7 grams of crack cocaine; January 23, 1998, $1,000 for 20.73 grams of crack cocaine; February 6, 1998, $1,700 for 58.29 grams of crack cocaine; and February 26, 1998, $1,000 for 27.53 grams of crack cocaine.

request to discharge counsel. Specifically, appellant argues that the court ruled that his request to discharge counsel was unmeritorious before it heard or considered his reasons for the request and that the trial court otherwise did not comply with Rule 4–215(e) by: (1) failing to ask him why he wanted to discharge counsel and (2) cutting off his explanation of his request to discharge counsel by saying, "We are not getting into that, sir."

Immediately prior to an August 21, 1998, suppression hearing, appellant moved to discharge his court-appointed attorney, Maura Lynch. The matter was referred forthwith to the administrative judge for Montgomery County. The prosecutor, who was the first to arrive in the administrative judge's courtroom, informed the court that appellant wished to discharge his court-appointed attorney. Before considering any additional information, the administrative judge responded, "No. I'm not going to let him." Ms. Lynch then arrived in the courtroom and had the following exchange:

MS. LYNCH: Your Honor, if I may be heard on it, please?

THE COURT: Are you appointed?

MS. LYNCH: Yes. I am [a Public Defender].

THE COURT: Does he understand he is going to trial without a lawyer if I let you out?

MS. LYNCH: Your Honor, if I may? This case has extremely serious and long potential incarceration. Mr. Hawkins is eligible for 10 years mandatory. He has four counts of distribution. Obviously, Your Honor, the mandatory can run consecutive.

One of the counts carries [sic] over 50 grams of cocaine, which makes him eligible for another mandatory, which is 5 without [the possibility of parole].

I have been working with Ms. Schweitzer [prosecutor] and Mr. Hawkins. I have spoken to him yesterday. It looked like we were working things out. He has since decided that he does not wish to follow my advice. He does

not wish to do what I am recommending, and he wishes to retain private counsel.

He has spoken to his girlfriend and they have the funds and that is what they wish to do. Your Honor, I would ask you, due to the serious nature of this case that he not be forced to go forward with me.

I have been in this position numerous times this summer. It is impossible for me to represent someone when they don't want to listen to me, and I just can't do it, and I won't do it. I had to do a whole trial earlier with my client firing me minute by minute, and it is horrendous.

There is so much time at stake here, he needs to have someone representing him that he feels comfortable with and will listen to.

At some point during Ms. Lynch's explanation of the situation, appellant arrived in the courtroom.

Appellant was then sworn in as a witness, and the judge asked him several questions. Facts elicited during the questioning include: that appellant was thirty-three years old; had graduated from high school in 1984; wanted Ms. Lynch to withdraw from the case and wanted to retain a private attorney; was upset that he had only spoken with Ms. Lynch once before their meeting the day before; and understood that his trial was scheduled to begin in four days. The following colloquy then occurred:

THE COURT: You want me to relieve Ms. Lynch as your lawyer?

[THE APPELLANT]: Yes, but it is just that I never got a chance to talk to her about the case. That is why I sat there and told her that yesterday.

I only seen [sic] her once since I been home, and that was in April, and then I seen [sic] her yesterday.

THE COURT: We are not getting into that issue, sir. I am just asking you, do you want me to relieve Ms. Lynch?

[THE APPELLANT]: No. I don't want to, but I want her to get a continuance so I can talk to her.

THE COURT: You can't get a continuance, I don't continue cases. That is a game that was played for many many years. You are either going to represent yourself or you are going to hire a lawyer, but you are going to hire a lawyer between now and Tuesday. It is that easy. You just tell me what you want to do.

[THE APPELLANT]: I will keep Ms. Lynch.

When the parties returned to Judge Ferretti's courtroom for the motions hearing, Ms. Lynch informed the court that the administrative judge had "denied everything with a clean sweep" and that Mr. Hawkins elected to be represented by her "[u]nder complete duress." Similarly, before trial began on August 25, 1998, Mr. Hawkins advised Judge Ferretti that he had "no choice but to stick with the Public Defender."

■■ A defendant in a criminal prosecution has a constitutional right to have effective assistance of counsel and the corresponding right to reject that assistance and represent himself. *See Powell v. Alabama*, 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (recognition of the constitutional right to the effective assistance to counsel), and *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)(recognition of the constitutional right to defend one's self). Maryland Rule 4–215(e), which was adopted to protect the right of self-representation, provides, in pertinent part:

(e) **Discharge of counsel, waiver.** If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reasons for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the

defendant discharges counsel and does not have new counsel.

The provisions of the rule are mandatory and noncompliance requires reversal. *Snead v. State,* 286 Md. 122, 123, 406 A.2d 98 (1979); *see also Williams v. State,* 321 Md. 266, 272, 582 A.2d 803 (1990).

"Allowing a defendant to specify the reasons for his request [to discharge counsel] is an integral part of the Rule and cannot be dismissed as insignificant." *Williams,* 321 Md. at 273, 582 A.2d 803. If the court finds the request meritorious, the court must grant the request to discharge counsel and, if necessary, give the defendant an opportunity to retain new counsel. *Id.* If the court finds the request unmeritorious, the court may proceed in one of three ways: (1) deny the request and, if the defendant rejects the right to proceed *pro se* and elects to keep the attorney he has, continue the proceedings, (2) permit the discharge but require counsel to remain available on a standby basis; or (3) grant the request and relieve counsel of any further obligation. *Id.*

"Although the trial judge need not engage in a full-scale inquiry pursuant to Rule 4–215, the judge must at least consider the defendant's reason for requesting dismissal before rendering a decision." *Id.* Thus, the onus is on the trial judge to ensure the reason for requesting dismissal of counsel is explained. *State v. Brown,* 342 Md. 404, 431, 676 A.2d 513 (1996). What we have said in another context is equally applicable here:

> We are not unmindful of the fact that many defendants, for surface or hidden reasons use every artifice or stratagem to unduly delay going to trial. Nevertheless, the orderly and efficient administration of the court system, and the praiseworthy purpose of prompt and expeditious trials of criminal cases, cannot outweigh the constitutional right of the appellant to be represented (*vel non* ) by counsel. (Parenthetical added).

*Brown v. State,* 27 Md.App. 233, 238, 340 A.2d 409 (1975).

In *Williams, supra,* the Court of Appeals was presented with a somewhat similar (but more egregious) fact pattern to

the one presented by the case at hand. In *Williams,* the case was called for trial after the appellant rejected a plea offer by the State. The following colloquy then ensued:

> THE DEFENDANT: Your Honor, may I say something?
>
> THE COURT: You may only at your own risk.
>
> [DEFENSE COUNSEL]: Wait a minute. Before you say anything, whatever you say is going on the record. What do you want to say?
>
> THE DEFENDANT: I want another representative.
>
> THE COURT: Your motion is denied. This is the only Public Defender you are going to get.
>
> THE CLERK: Your Honor, this is—
>
> THE COURT: No, sir, at this point we are going to proceed. This is not going to be a harangue or filibuster, ... your lawyer, very highly respected among the Bar, very well-prepared. All he has done is indicated what, communicated the offer to you. The offer has been turned down. You are now going to trial. Arraign the defendant.

*Williams,* 321 Md. at 267–68, 582 A.2d 803. The Court of Appeals held that because the trial court failed to inquire into the defendant's reason for requesting new counsel, it had not complied with Maryland Rule 4–215(e). *Williams,* 321 Md. at 274, 582 A.2d 803. Accordingly, the Court reversed the convictions.

 Synthesizing the case law mentioned above, a lower court should engage in a simple three-step process when determining whether the reasons presented by a defendant who wishes to discharge his attorney are meritorious. The court should first ask the defendant why he wishes to discharge counsel, give careful consideration to the defendant's explanation, and then rule whether the explanation offered is meritorious.

 Here, there is no indication that the court took any of these steps before ruling. The judge made his initial ruling before either listening to or considering any explanation. Later, when appellant was in the process of explaining why he

wanted to discharge his court-appointed attorney, the judge interjected, "We are not getting into that issue, sir. I am just asking you, do you want me to relieve Ms. Lynch?" What the judge did not wish "to get into" was the very thing that the court was required to ask him about and carefully consider.

 Under these circumstances, we hold that the administrative judge did not comply with the dictates of Maryland Rule 4–215(e). Because compliance is mandatory, non-compliance requires reversal of the case and a remand for a new trial.[3]

## II.

It is unnecessary to decide appellant's second argument, namely, that the trial court erred in denying his motion to sever his four-count indictment. Upon remand, the procedural posture may change, and thus, any ruling we make under the facts presented would be moot. While we shall not address appellant's second argument, we suggest that, if the argument presents itself again on remand, the trial court should follow the two-step process set forth in *Solomon v. State,* 101 Md.App. 331, 347–55, 646 A.2d 1064 (1994), and *Wieland v. State,* 101 Md.App. 1, 8–23, 643 A.2d 446 (1994).

**JUDGMENTS REVERSED; CASE REMANDED FOR RETRIAL; COSTS TO BE PAID BY MONTGOMERY COUNTY.**

---

**3.** Retrial would not be permitted if the evidence were insufficient to sustain appellant's convictions. *Mackall v. State,* 283 Md. 100, 113–14, 387 A.2d 762 (1978). Here, the evidence of appellant's guilt was clearly sufficient to convict. In his brief, appellant does not argue to the contrary.