988 A.2d 545

**Larry Livingston JOSEPH**

v.

**STATE of Maryland.**

**No. 1477 Sept.Term, 2008.**

Court of Special Appeals of Maryland.

Feb. 1, 2010.

276

David P. Kennedy (Elizabeth L. Julian, Acting Public Defender, on the brief), Baltimore, MD, for Appellant.

Jessica V. Carter (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: DAVIS, WRIGHT, and JAMES A. KENNEY, III (Retired, Specially Assigned), JJ.

JAMES A. KENNEY, III, Judge (Retired, Specially Assigned).

Appellant, Larry Livingston Joseph, was convicted of two counts of first-degree murder and two counts of using a handgun in the commission of a felony or crime of violence by a jury sitting in the Circuit Court for Baltimore City.[1] The

---

1. Appellant was also charged with two counts of "wearing, carrying, and transporting a handgun." In accordance with the trial court's instructions, the jury did not render verdicts on these charges, having

court sentenced appellant to two life terms on the first-degree murder charges and two twenty-year terms on the handgun charges; all sentences were to run consecutively.

On appeal, appellant presents two questions for our review, which we have slightly reworded: [2]

1. Did the circuit court violate Maryland Rule 4–215(e)?

2. Did the judge deprive appellant of a fair trial by frequently interjecting himself into the proceedings?

Because we hold that the circuit court violated Rule 4–215(e), we shall reverse appellant's convictions and remand to the circuit court for proceedings consistent with this opinion. It is therefore unnecessary for us to address appellant's second question, but we believe some comment is appropriate.[3]

## BACKGROUND

On September 16, 2007, at approximately 4:30 p.m., Baltimore City police officers and other emergency personnel were dispatched to the 3400 block of Belair Road in response to a report that two men had been wounded by gunfire. At that

---

convicted appellant of using a handgun in the commission of a felony or crime of violence.

**2.** In his words, appellant presents the following questions for our review:

1. Where the issue of discharge of defense counsel was raised before trial, did the trial court violate Maryland Rule 4–215(e) by not eliciting Joseph's reasons for wanting to discharge counsel and peremptorily stating that trial would not be postponed and that Joseph's only options were to represent himself, to obtain new counsel by the start of trial the next day, or to continue with his current lawyer?

2. Did the trial judge deprive Joseph of a fair trial by frequently interjecting himself into the trial and assisting the prosecution through questioning witnesses and making inappropriate comments?

**3.** Retrial would not be permitted if the evidence were insufficient to prove appellant's guilt beyond a reasonable doubt. *Mackall v. State*, 283 Md. 100, 113–14, 387 A.2d 762 (1978). Here, however, the evidence was clearly sufficient to sustain appellant's convictions. Indeed, he does not argue otherwise.

location, police discovered Deon Morris and Channing Myrick lying on the ground. Both men had been shot several times. The police also found fifteen spent .40 caliber "shell casings," ostensibly fired from the same gun. Both victims were transported to Johns Hopkins Hospital, where they later died. Autopsies determined that Myrick had been shot five times and that Morris had been shot nine times. Appellant was ultimately arrested for their murders.

At trial, the State presented evidence from a number of witnesses whose testimony, because of the questions presented, is, for the most part, not relevant here. For purposes of this appeal, we need only note that appellant was convicted on evidence that included the testimony of three eyewitnesses that he shot and killed Morris and Myrick.

## DISCUSSION

### I.

#### A.

On the eve of trial, at approximately 5:10 p.m., the circuit court conducted a motions hearing. At the outset of that hearing, the prosecutor informed the court that appellant "stated something to [him] about the release of his counsel." In response, the court immediately exclaimed: "That's not going to happen." Then, without asking him if or why he wanted to release his counsel, the court told appellant that, if he did so, he would have to represent himself or retain a new attorney by the next morning because the trial was not going to be postponed. Appellant elected to retain his counsel. The record reflects the following:

> [The State]: The first issue to deal with on the record is that I believe [appellant] has stated something regarding the release of his—
>
> [The Court]: Mr. [prosecutor], I'm losing you. I'm sorry.
>
> [The State]: I'm sorry, Your Honor. I believe [appellant] stated to me about the release of his counsel. I wanted to deal with that on the record.

[The Court]: Oh, yeah. That's not going to happen. I mean, you got two choices. You can go to trial with [your current defense counsel]. You got three choices, [appellant.] You can go to trial with [current counsel].

[Appellant]: Yes, sir.

[The Court]: You can have a new lawyer come in tomorrow, ready to go or you can go without a lawyer. I'm not going to postpone the case.

[Defense Counsel]: Or he can avail himself on the plea agreement.

[The Court]: Yeah.

[Defense Counsel]: Okay.

[The Court]: But I don't, you know—well, yeah he could, but I'd want to be really careful on that. So, I will not postpone your case, [appellant]. So, we can't do it. We can't have an efficient or try to have an efficient courthouse. You want a trial. God bless you. You're entitled to it and I'm going to do everything in my power to get you a fair trial, but it's not going to be postponed. In fact, I don't know if you just heard me. There's another case that we sort of bumped so that you could go first. Now, if I postpone yours, I wouldn't be able to try theirs. Get a new lawyer for tomorrow which I don't think you can do. Take the plea or go ahead with [current counsel] now. What's your choice?

[Appellant]: Go with [current counsel].

At the conclusion of the hearing, the issue of appellant's representation was raised for a second time:

[The Court]: All right. Any other motions other than the motion to suppress.

[Defense Counsel]: No.

[The Court]: All right. Suppress the photo—no 4th Amendment issues, 5th Amendment, 6th Amendment, nothing. All right, gentlemen.

[Defense Counsel]: Other than my previous 6th Amendment issue—

[The Court]: Which was what?

[Defense Counsel]: Inability to have the counsel of his choice.

[The Court]: Yeah. Yeah, he does if he can get him here by tomorrow. All right. I'll see you all tomorrow.

The trial proceeded the following day with appellant's then current counsel defending him.

## B.

Appellant contends that his convictions "must be reversed because the trial judge violated the explicit requirements of Maryland Rule 4–215(e)," regarding the possible discharge of his defense counsel. To support that contention, he relies on the prosecutor's pre-trial statement to the court that appellant had "said something ... about releasing his counsel" and argues that that statement, "albeit somewhat indirect, was certainly sufficient to" trigger the requirements of Rule 4–215(e). He further argues that the circuit court violated that rule because it failed to ask "his reasons for wanting to discharge counsel."

In response, the State contends that there was no need for the circuit court to comply with the requirements of Rule 4–215(e) because it was the prosecutor, and not appellant or defense counsel, who raised the discharge issue, and thus, the rule was not invoked. The State further argues that, because he did not object to "the case proceed[ing] with defense counsel providing representation," appellant, "in effect, withdrew his request, if any, to discharge counsel and thus waived any claim that the trial court erred with respect to that request." We are not persuaded by either argument, and, because we hold that there was a failure to comply with Rule 4–215(e), we are required to reverse appellant's convictions. *See, e.g., Williams v. State,* 321 Md. 266, 273–74, 582 A.2d 803 (1990) (reversing a defendant's convictions because, after he indicated a desire to discharge his counsel, the circuit court failed to inquire why he wanted to do so); *Hawkins v. State,* 130 Md.App. 679, 688, 747 A.2d 759 (2000) (same).

■ As the Court of Appeals has stated: "A defendant's request to discharge counsel implicates two fundamental rights that are guaranteed by the Sixth Amendment to the United States Constitution:[4] the right to the assistance of counsel and the right to self-representation." *State v. Campbell,* 385 Md. 616, 626–27, 870 A.2d 217 (2005). On the other hand, "[t]he right to counsel may be waived by the defendant provided that 'he knows what he is doing and his choice is made with his eyes open.'" *Id.* at 627, 870 A.2d 217 (quoting *Fowlkes v. State,* 311 Md. 586, 589, 536 A.2d 1149 (1988)).

Maryland Rule 4–215 "was designed to protect both the right to counsel and the right to self-representation and ensures that decisions to waive counsel would pass constitutional muster." *Campbell,* 385 Md. at 629, 870 A.2d 217. To that end, Rule 4–215(e) states:

> *If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request.* If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and

---

**4.** The Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. XI.

does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance.

(Emphasis added.)

This rule is not self-executing and comes into effect when "a defendant requests permission to discharge an attorney." *Id.* The rule, however, does not indicate how the request is to be made, and it " 'is silent as to what level of discourse is required to discharge counsel.' " *Henry v. State,* 184 Md.App. 146, 171, 964 A.2d 678 (2009) (quoting *Campbell,* 385 Md. at 629, 870 A.2d 217), *cert. granted on other grounds,* 408 Md. 487, 970 A.2d 892 (2009). In addition, the history of Rule 4–215(e) provides no direct commentary on the phrase "*requests* permission to discharge an attorney." *Campbell,* 385 Md. at 628 n. 4, 870 A.2d 217 (italics in original). What we know is that subsection (e) was derived from former Maryland Rule 723c, which stated in relevant part:

**When a defendant indicates a desire or inclination to waive counsel,** the court may not accept waiver until it determines, after appropriate questioning on the record in open court, that the defendant possesses the intelligence and capacity to appreciate the consequences of his decision[.]

*Id.* (emphasis added; quotation omitted).

The Court of Appeals has said that "[t]he request does 'not need to be a talismanic phrase or artfully worded to qualify as a request to discharge, so long as a court could reasonably conclude that [a person] sought to discharge his counsel.' " *Henry,* 184 Md.App. at 171, 964 A.2d 678 (quoting *Campbell,* 385 Md. at 632, 870 A.2d 217). In other words, "to establish the minimum 'declaration' sufficient to constitute [an] assertion of the right to self-representation, the 'declaration [must serve] to alert the trial judge that further inquiry may be necessary.' " *Leonard v. State,* 302 Md. 111, 124, 486 A.2d 163 (1985) (quoting *Snead v. State,* 286 Md. 122, 127, 406 A.2d 98 (1979)). " 'Therefore,' " the Court of Appeals has concluded

that, " 'any statement by the defendant from which the court could reasonably conclude that the defendant desired self-representation would be sufficient.' " *Id.*

■■ Once the court is alerted to the defendant's desire to discharge his counsel, it "should engage in a simple three-step process." *Hawkins,* 130 Md.App. at 687, 747 A.2d 759. "The court should first ask the defendant why he wishes to discharge counsel, give careful consideration to the defendant's explanation, and then rule whether the explanation offered is meritorious." *Id.* "Thus, the onus is on the trial judge to ensure the reason for requesting dismissal of counsel is explained." *Id.* at 686, 747 A.2d 759.

■■ If the reason given is meritorious, a court is "obligated to grant the request and give [the defendant] time to retain new counsel." *Williams,* 321 Md. at 274, 582 A.2d 803. If it is not, a court may proceed in one of three ways: "(1) deny the request and, if the defendant rejects the right to represent himself and instead elects to keep the attorney he has, continue the proceedings; (2) permit the discharge in accordance with the Rule, but require counsel to remain available on a standby basis; (3) grant the request in accordance with the Rule and relieve counsel of any further obligation." *Id.* at 273, 582 A.2d 803.

Two Maryland cases clearly demonstrate these principles. In *Williams, supra,* before his trial began, Williams informed the trial court: *"I want another representative."* 321 Md. at 267, 582 A.2d 803 (emphasis added). In response, the court stated: "No, sir, at this point we are going to proceed. This is not going to be a harangue or filibuster.... You are now going to trial." *Id.* at 268, 582 A.2d 803. Thereafter, Williams was convicted of, among other crimes, assault. *Id.* He appealed, arguing that, under Rule 4–215(e), he was entitled to a new trial because the court refused to allow him to explain the reasons for wanting to discharge counsel. The Court of Appeals agreed, reasoning that "the trial court could not have properly exercised any of [its] options [with respect to Williams' request] because it had no basis—Williams' rea-

sons—upon which to act." *Id.* at 274, 582 A.2d 803. There-fore, the Court found that "[a]llowing a defendant to specify the reasons for his request is an integral part of the Rule and cannot be dismissed as insignificant." *Id.* at 273, 582 A.2d 803.

This Court reached a similar conclusion in *Hawkins,* 130 Md.App. at 679, 747 A.2d 759. In that case, immediately before a pre-trial suppression hearing, the defendant moved to discharge his court-appointed attorney. *Id.* at 683, 747 A.2d 759. The suppression hearing was immediately postponed, and the discharge matter was referred to the administrative judge of the court. *Id.* The prosecutor, who was the first to arrive in the administrative judge's courtroom, informed the court that Hawkins wanted to discharge his court-appointed counsel. *Id.* "Before considering any additional information, the administrative judge responded, 'No. I'm not going to let him.' " *Id.*

Then, defense counsel entered the courtroom and asked the administrative judge: "Your Honor, if I may be heard on it, please?" *Id.* In response, the administrative judge stated: "Does he understand he is going to trial without a lawyer if I let you out?" *Id.*

At some point during the subsequent discussions between the court and counsel, Hawkins entered the courtroom and told the judge, among other things, that he wanted his court-appointed counsel to withdraw so he could hire a private attorney. *Id.* at 684, 747 A.2d 759. The following colloquy then occurred:

THE COURT: You want me to relieve [current defense counsel] as your lawyer?

[HAWKINS]: Yes, but it is just that I never got a chance to talk to her about the case. That is why I sat there and told her that yesterday.

I only seen [sic] her once since I been home, and that was in April, and then I seen [sic] her yesterday.

THE COURT: We are not getting into that issue, sir. I am just asking you, do you want me to relieve [defense counsel]?

[HAWKINS]: No. I don't want to, but I want her to get a continuance so I can talk to her.

THE COURT: You can't get a continuance, I don't continue cases. That is a game that was played for many many years. You are either going to represent yourself or you are going to hire a lawyer, but you are going to hire a lawyer between now and Tuesday. It is that easy. You just tell me what you want to do.

[HAWKINS]: I will keep [defense counsel].

*Id.* at 684–85, 747 A.2d 759.

Following his trial and convictions for cocaine distribution, Hawkins appealed, claiming that the trial court violated Rule 4–215(e). We agreed. First, we pointed out that "[t]he judge made his initial ruling before either listening to or considering any explanation[,]" disregarding the fact that the initial holding was made in response to the prosecutor's statement that Hawkins wanted to discharge his counsel. *Id.* at 687, 747 A.2d 759. Then, we noted that the court told Hawkins that it was "not getting into that issue" when he tried to explain why he wanted to discharge his counsel. *Id.* at 687–88, 747 A.2d 759. As a result, we held that the judge did not comply with Rule 4–215(e) and remanded Hawkins' case for a new trial. *Id.*

 Here, we are persuaded that the prosecutor's statement was sufficient to alert the judge that appellant had indicated a desire to discharge defense counsel and that further inquiry was required. As soon as the prosecutor informed the court that appellant said something about "the release of his counsel," the circuit court, without considering any evidence or explanation, immediately responded: "Oh yeah. That's not going to happen." Clearly, the court understood from the prosecutor's remarks that appellant had expressed a desire to "release" counsel. Then, apparently assuming that no explanation for discharging counsel would be

meritorious, the court told appellant that no postponement of the trial would be granted if he chose to discharge his counsel.

In light of the purpose of the rule and the fundamental rights it seeks to protect, we are not persuaded by the State's argument that Rule 4–215(e) can only be triggered by appellant himself or his counsel indicating appellant's desire to discharge defense counsel. The case law indicates that all that is required to trigger the mandated inquiry from the court is that the court be put on notice of a defendant's desire to discharge counsel, and that clearly happened in this case.

Moreover, given the circuit court's immediate strong reaction to even the suggestion that appellant might want to discharge his counsel, we do not fault appellant for not pressing the issue. Indeed, by stating that he would not grant any postponement, the judge made it clear that no reason appellant might give for wanting to discharge his counsel would be considered. Nor can we fault appellant, as the State would have us do, for not continuously objecting to the trial moving forward with his then current counsel representing him. The futility of further efforts was made clear when defense counsel again raised the "previous 6th Amendment issue" and appellant's right "to have counsel of his choice" at the end of the pre-trial motions hearing only to be met with the response, "Yeah, he does if he can get him here by tomorrow." Once the court denies the request to discharge, constant or multiple objections are not required to preserve this issue for appeal. *See Williams*, 321 Md. at 267–68, 582 A.2d 803; *Hawkins*, 130 Md.App. at 687–88, 747 A.2d 759.

In sum, Rule 4–215(e) was violated when the court was made aware of appellant's desire to discharge counsel but did not ask for or consider appellant's reasons for wanting to do so before denying the request.

## II.

Appellant contends that his convictions should be reversed because he was denied "his constitutional and common law right to a fair trial before an impartial judge[.]" In support of

that contention, appellant points to forty-six "questions" or "comments" by the trial judge that allegedly assisted the prosecution, and he argues that the net effect of those interjections deprived him of a fair trial.

Initially, we point out that, under Maryland Rule 8–131(a),[5] a party has to object to preserve allegations of judicial bias for review. *Diggs v. State*, 409 Md. 260, 286, 973 A.2d 796 (2009). If no objection is made, we ordinarily only review such claims under the plain error doctrine.[6] *Id.* But we do not apply the preservation rule in a "hyper-technical fashion ... where the record shows that trial counsel has made good faith and timely objections and attempted to explain, on the record, counsel's concerns regarding a pattern of questioning by the trial court." *Smith v. State*, 182 Md. App. 444, 479–80, 957 A.2d 1139 (2008).

"It is well settled in Maryland that fundamental to a defendant's right to a fair trial is an impartial and disinterested judge." *Archer v. State*, 383 Md. 329, 357, 859 A.2d 210 (2004). In addition, a criminal defendant is entitled "to a judge who has the appearance of being impartial and disinterested." *Id.* (internal punctuation and quotation omitted). Indeed:

---

**5.** Maryland Rule 8–131(a) provides:

The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

**6.** The plain error doctrine provides that " 'an appellate court may in its discretion in an exceptional case take cognizance of plain error even though the matter was not raised in the trial court[,]' " *Rubin v. State*, 325 Md. 552, 587–88, 602 A.2d 677 (1992) (quoting *Dempsey v. State*, 277 Md. 134, 141–42, 355 A.2d 455 (1976)), particularly where the error " 'vitally affects a defendant's right to a fair trial.' " *Diggs*, 409 Md. at 286, 973 A.2d 796 (quoting *State v. Daughton*, 321 Md. 206, 211, 582 A.2d 521 (1990)).

It is beyond dispute that the trial judges perform a unique and persuasive role in [the judicial] system: confidence in the judiciary is essential to the successful functioning of our democratic form of government.

It is because judges occupy a distinguished and decisive position that they are required to maintain high standards of conduct. Their conduct during a trial has a direct bearing on whether a defendant will receive a fair trial because their opinion or manifestations thereof usually will significantly impact the jury's verdict. In addition, if the defendant has elected to be tried by a jury, it is the province of that jury to decide the guilt or innocence of the defendant.

*Jefferson–El v. State,* 330 Md. 99, 106, 622 A.2d 737 (1993) (internal punctuation and citations omitted).

With respect to the judicial examination of witnesses, we have "distill[ed]" the following principles:

(1) The primary purpose of judicial interrogation of witnesses is to clarify matters elicited on direct or cross examination. (2) Judicial interference in the examination of witnesses should be limited and it is preferable for the trial judge to err on the side of abstention from intervention in the case. (3) Although the number of questions posed by the trial judge [may] exceed[ ] those normally asked by a trial judge, the sheer number, standing alone, is not determinative of whether reversal is warranted. (4) It is preferable for the presiding judge to afford counsel the opportunity to elicit relevant and material testimony prior to interceding. (5) Continued inquisitorial participation in the questioning of witnesses runs afoul of the court's role as impartial arbiter, whether such questions are proper or improper, when they tend to influence the jury regarding the court's view of the testimony and evidence. (6) The most egregious manner of intervention is the trial court's personal injection of its views and/or attitude toward witnesses or parties or their theory of the case through intimidation, threatening, sarcasm, derision or expressions of disbelief, irrespective of the frequency or the point in time during or at the conclu-

sion of direct or cross-examination of counsel. (7) If the direct and cross-examination of counsel is woefully inadequate, requiring extensive supplementation thereof, the preferred procedure is for the court to summons both counsel to the bench or in chambers and suggest how it wishes to proceed. (8) Greater latitude is granted to a trial judge based on the complexity of a case.

*Smith,* 182 Md.App. at 486–87, 957 A.2d 1139.

In the event of a retrial in this case, those principles should be applied to assure appellant a fair trial, presided over by a judge who is, and who appears to be, impartial.

**JUDGMENTS REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**