57 A.3d 508

Melvin D. WILLIAMS

v.

STATE of Maryland.

No. 644, Sept. Term, 2011.

Court of Special Appeals of Maryland.

Dec. 19, 2012.

624

Jeffrey M. Ross (Paul B. DeWolfe, Public Defender, on the brief) Baltimore, MD, for appellant.

Ryan R. Dietrich (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: DEBORAH S. EYLER, WRIGHT, J. FREDERICK SHARER (Retired, Specially Assigned), JJ.

EYLER, DEBORAH S., J.

A jury in the Circuit Court for Harford County convicted Melvin D. Williams, the appellant, of possession of cocaine and

resisting arrest. He was sentenced as a subsequent offender to a term of incarceration of eight years, all but four years suspended, for the possession of cocaine conviction and a consecutive term of incarceration of two years, all but one year suspended, for resisting arrest. On appeal, he poses two questions for consideration, which we have rephrased:

I. Did the circuit court commit reversible error by failing to comply with Maryland Rule 4–215(e)?

II. Was the evidence legally sufficient to convict the appellant of resisting arrest?

For the following reasons, we shall affirm the judgments of the circuit court.

## FACTS AND PROCEEDINGS

In the late evening of September 15, 2008, Harford County Sheriff's Office Deputies Grant Krulock and Robert Schultz, who were on uniformed bike patrol, observed the appellant walking down the middle of the street in a high crime area with "his left hand down in his shorts." The deputies mounted their bikes and approached the appellant, who still had his left hand in his pants. Deputy Krulock asked the appellant to stop, engaged him in conversation, and asked him to remove his hand from his pants. The appellant became agitated and argumentative. When he finally removed his hand from his pants, he turned away from the deputies. As the appellant brought his hand back down to his side, Deputy Krulock saw a small clear plastic bag fall from the appellant's hand to the ground.

Deputy Krulock ordered the appellant to put his hands behind his back. At first, the appellant complied, but when the deputy touched his arm, he ran. Deputy Krulock yelled for the appellant to stop, but the appellant kept running. Deputy Schultz deployed his taser at the appellant, but did not hit him. The deputies chased the appellant on foot around a residence and back out to the street, where a bystander tackled him and held him down. The appellant continued to

struggle to get away, however. Multiple times Deputy Krulock ordered the appellant to "get down on the ground," but the appellant continued to resist. Even though Deputy Krulock warned the appellant that if he did not comply with the deputies' directions, he would be tased, the appellant continued to try to get away from the citizen who was holding him. Deputy Krulock then tased the appellant and placed him in handcuffs.

In a search incident to arrest, Deputy Krulock recovered from the appellant's wallet a plastic bag containing a small yellowish piece of rock, later determined to be cocaine.

Deputy Krulock contacted Deputy Chad Layton, also of the Harford County Sheriff's Office, to transport the appellant to the station house in a patrol vehicle. Deputy Layton searched the back seat of his vehicle before placing the appellant there. The appellant's hands still were cuffed behind his back. The drive to the station house took two minutes. Deputies Krulock and Schultz returned to the station house on their bikes.

When Deputies Krulock and Schultz arrived at the station house, the appellant still was in the back seat of Deputy Layton's patrol car. Deputy Layton removed the appellant from his vehicle and transferred him back into Deputy Krulock's custody. Deputy Layton then searched the back seat of his patrol car and found a plastic bag containing several individually bagged small white rocks and a green plant-like substance; the items later were confirmed to be cocaine and marijuana, respectively. There was fecal material on the outside of the recovered package. Deputy Layton gave the package he had found in the back seat of his patrol car to Deputy Krulock, who itemized the evidence, submitted it for analysis, and prepared a report of the arrest. Deputy Krulock then transported the appellant to the Harford County Detention Center.

All the above was adduced as evidence during the State's case at the appellant's jury trial.

The appellant testified on his own behalf. He stated that at the relevant time he was a resident at a recovery house that treats people with mental health and substance abuse prob-

lems. On the day of the incident, he had a pass to visit family and friends at his uncle's house in Edgewood. He went to his uncle's house, but he left when he was offered drugs. He then walked in the street, where "those bags ... are probably everywhere." He saw a bag and picked it up, hoping it contained drugs he could use to get high. He put the bag in his pocket.

According to the appellant, as he walked by the deputies, they started following him and asked him his name. At that point, he pulled the bag out of his pocket and dropped it on the ground. He claimed to have panicked because he felt too confined and wanted to get back into an open area, "like the middle of the street," and so he ran. As he was getting to the middle of the street and preparing to give up, he was tackled by a bystander. He gave up, was arrested and handcuffed, and was placed in the back of a patrol car. He denied that he had any other drugs on him when he was placed in the back of the patrol car and testified that he did not leave anything in the vehicle.

Even though the appellant was arrested on September 15, 2008, his trial did not take place until May 4 and May 5, 2011. The lengthy delay was attributable primarily to assessing the appellant's competency to stand trial. As noted, the appellant was found guilty of the offenses of possession of cocaine and resisting arrest.[1]

Additional facts will be provided as necessary to our discussion.

## DISCUSSION

### I.

### Request To Discharge Counsel

At all times in this case, the appellant was represented by John Janowich, Esquire, of the Office of the Public Defender.

---

1. The appellant also was charged with possession of marijuana and possession with intent to distribute cocaine. He was not convicted of those counts.

On January 27, 2010, the appellant wrote a letter to the court, which was received and filed on January 29, 2010. The letter, without any grammatical or stylistic changes, states:

> My name is Melvin Williams JR Im writting to request New representation From the Public defender's office. Pending me being able to afford an attorney. MR John Janowich has truly No interest on my behalf, in trying to help me on my case. I truly feel Im being mis-represented. May U please remove him from my case. I'll be truly appreciated.
>
> Sincerely Melvin Williams

The appellant sent a copy of the letter to Mr. Janowich. A written notation on the letter indicates that copies of the letter were sent by court personnel to the State's Attorney's Office and the Office of the Public Defender.

The circuit court did not address the contents of the appellant's letter at any pretrial proceeding or at trial, or in any way. The appellant contends the circuit court violated Rule 4–215(e) by failing to address his January 27, 2010 *pro se* written request to obtain "new representation from the Public defender's office." He suggests that the circuit court became obligated to address his request to discharge counsel and obtain new counsel upon receipt of the letter, on January 29, 2010. The appellant acknowledges that there were several proceedings before the court between January 29, 2010, and the May 4–5, 2011 trial, and that he neither asked the court for permission to discharge Mr. Janowich as his counsel during that period or at trial, nor did he make reference to the court during that period or at trial about his January 27, 2010 letter. He asserts, however, that he remained dissatisfied with Mr. Janowich but assumed because he had gotten no response to his January 27, 2010 letter that any additional complaints or requests would be futile. The appellant further complains that the court never inquired at any of the "perfunctory" pretrial proceedings whether there were any outstanding additional matters pending.

The State counters that the court did not err in failing to address the appellant's *pro se* written request to discharge

counsel and obtain a new attorney. Specifically, the State asserts that neither the appellant nor Mr. Janowich ever informed the court on the record in open court of the appellant's continued desire to discharge Mr. Janowich, even though the appellant and Mr. Janowich appeared before the court for four pretrial hearings and at trial. The State maintains that the appellant's *pro se* written request was by itself insufficient to trigger the requirements of Rule 4–215(e), and that the appellant subsequently waived the issue by not seeking any action from the court regarding his request to discharge Mr. Janowich.

■ The right of a criminal defendant to be represented by competent counsel is guaranteed by the Sixth Amendment to the federal Constitution, made applicable to the States by the Fourteenth Amendment, and by Article 21 of the Maryland Declaration of Rights. *Brye v. State*, 410 Md. 623, 634, 980 A.2d 435 (2009). The purpose of Rule 4–215 is to protect that right. *Parren v. State*, 309 Md. 260, 281–82, 523 A.2d 597 (1987). With respect to discharge of counsel, Rule 4–215 provides at subsection (e):

> **Discharge of counsel—Waiver.** If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. . . .

The requirements of Rule 4–215 are mandatory and require strict compliance. *Pinkney v. State*, 427 Md. 77, 87, 46 A.3d

413 (2012). A trial court's failure to comply with the requirements of the Rule constitutes reversible error. *Id.* at 88, 46 A.3d 413 (citing *State v. Hardy,* 415 Md. 612, 621, 4 A.3d 908 (2010); *Broadwater v. State,* 401 Md. 175, 182, 931 A.2d 1098 (2007); *Williams v. State,* 321 Md. 260, 272 (1990)).

■ Rule 4-215(e) is not self-executing, however. *State v. Davis,* 415 Md. 22, 32, 997 A.2d 780 (2010). Its requirements are triggered only when a defendant or another person present before the court informs the court of the defendant's "present intent to seek a different legal advisor." *Id.* at 33, 997 A.2d 780. The defendant's request need not be "artfully worded" or include any "talismanic phrase" to trigger the processes set forth in Rule 4-215(e). *Id.* at 31, 997 A.2d 780 (quoting *State v. Campbell,* 385 Md. 616, 632, 870 A.2d 217 (2005)); *id.* at 32, 997 A.2d 780 ("Any statement that would reasonably apprise a court of defendant's wish to discharge counsel will trigger a Rule 4-215(e) inquiry regardless of whether it came from the defendant or from defense counsel."); *Hardy,* 415 Md. at 623, 4 A.3d 908 ("A defendant makes such a request even when his or her statement constitutes more a declaration of dissatisfaction with counsel than an explicit request to discharge."); *Leonard v. State,* 302 Md. 111, 124, 486 A.2d 163 (1985) (" '[A]ny statement by the defendant from which the court could reasonably conclude that the defendant desired self-representation would be sufficient.' ")(quoting *Snead v. State,* 286 Md. 122, 127, 406 A.2d 98 (1979)); *Joseph v. State,* 190 Md.App. 275, 288, 988 A.2d 545 (2010) (concluding that the prosecutor's statement was sufficient to trigger a Rule 4-215(e) inquiry; "all that is required to trigger the mandated inquiry from the court is that the court be put on notice of a defendant's desire to discharge counsel.").

*State v. Northam,* 421 Md. 195, 26 A.3d 344 (2011), is somewhat similar to the case at bar. In that case, on February 26, 2008, the defendant mailed a letter to the clerk of the circuit court saying that he was "dropping [his] public defender" and requesting that he be provided with a "Probono [sic] Lawyer." *Id.* at 198, 26 A.3d 344. The next day, the defen-

dant mailed a letter to the local District Court, recounting his dissatisfaction with his attorney and again stating that he wanted to discharge counsel and be assigned a new legal advisor. At an "appearance" hearing in the circuit court on March 5, 2008, at which the defendant appeared with his public defender, the judge advised the defendant to reconsider his decision to discharge his counsel. The court explained to the defendant that, contrary to his misunderstanding, public defenders are lawyers. The defendant remained represented by the same public defender, including at a motions hearing on July 9, 2008.

On July 18, 2008, the clerk of the circuit court received from the defendant a *pro se* motion for change of venue, which included as the last line a statement invoking his "right" to be "represented by a firm who has represented thereselves [sic] with Integerty [sic] and Justice." *Id.* at 202, 26 A.3d 344. After the motion for change of venue was denied, the defendant filed a second *pro se* motion for change of venue, which included the same language with the addition, "My Lawyer[']s files are updated but he has made no contact with me and trial is set at Sept 24[.] I'm requesting a Court appointed attorney and Change of Venue." *Id.* at 202–03, 26 A.3d 344. The second motion was denied by the court, as well.

Thereafter, at a pretrial hearing on September 12, 2008, the defendant appeared, represented by the same attorney. He did not raise the issue of discharging his attorney during the hearing. One of the issues addressed at the hearing was a potential conflict caused by defense counsel's previous representation of one of the State's witnesses. Docket entries reflect that both the State and the defendant expressly consented to continued representation of the defendant by his attorney. *Id.* at 203–04, 26 A.3d 344.

Defense counsel appeared and represented the defendant at a second pretrial hearing on September 24, 2008. At the conclusion of that hearing, when the court inquired whether there were any other motions to be addressed, the defendant

did not bring up his previous requests to discharge his attorney.

The defendant was subsequently tried before a jury and found guilty of the offenses for which he was charged. On appeal in this Court, he argued that the circuit court had erred by failing to comply with the requirements of Rule 4–215(e). In an unpublished opinion, we reversed the convictions. The State filed a petition for *writ of certiorari* in the Court of Appeals, which was granted on the issue of requested discharge of counsel. *State v. Northam*, 415 Md. 337, 1 A.3d 467 (2010).

The Court of Appeals reversed the decision of this Court, reinstating the defendant's convictions. It reasoned that, even though the defendant had submitted written requests for appointment of new counsel, because neither he nor his counsel ever brought the issue to the court's attention on the record in open court, the defendant had waived his right to have the court address his request. The Court of Appeals further concluded that Rule 4–215(e) was not triggered by the defendant's *pro se* motions; the Court quoted this Court's opinion in *White v. State*, 23 Md.App. 151, 155–56, 326 A.2d 219 (1974), emphasizing that it is the duty of a defendant to bring undecided motions to the trial court's attention. *Id.* at 206, 326 A.2d 219. The Court further quoted *White* for the proposition that to "stand mute in the face of repeated requests by the judge for all pending motions to be decided" constitutes a clear waiver of the defendant's right to a ruling on a neglected motion; and if a request is so unimportant that the defendant forgets to seek a ruling from the court, then the trial judge cannot be faulted for not searching the entire record on behalf of the defendant to make sure the defendant has not neglected to pursue a previously undecided motion. *Id.*

The *Northam* Court pointed out that it is the responsibility of an attorney representing a criminal defendant to bring to the attention of the court his or her client's present desire to obtain new counsel or to represent himself. The

Court observed, nevertheless, that criminal defendants often will experience fleeting desires for new counsel:

> During the period of time in which there is an attorney-client relationship between a criminal defendant and his or her lawyer, it is not unusual for the defendant to express a desire for representation by a different lawyer. For that reason, defense counsel is not obligated to tell the trial court about every conversation in which a client has indicated an interest in changing counsel. A transitory wish for a different lawyer at various points in time prior to trial is, however, distinguishable from a considered decision to request that the trial court permit the defendant to discharge defense counsel. Therefore, when a lawyer has been told by a criminal defendant that the defendant wants to be represented by some other lawyer, unless the defendant thereafter consents to the lawyer's continued representation, the lawyer is obligated to advise the trial court of the defendant's wishes.

*Id.* at 208 n. 4, 26 A.3d 344. The Court declined to infer that the defendant's public defender had known that the defendant wanted to discharge him but had acted contrary to the desires of his client and his professional obligations as imposed by the Rules of Professional Conduct.

In the case at bar, the appellant's sole expression of dissatisfaction with his attorney was his January 27, 2010 letter. At most, that reflected the appellant's desire to obtain new legal counsel as of January 27, 2010; it did not necessarily reflect his view about the quality of representation provided by his attorney on any of the subsequent dates that he appeared before the court. Absent any reaffirmation by the appellant of a present intention to discharge Mr. Janowich and obtain new counsel, it was reasonable for the trial court to infer that any issues between the appellant and Mr. Janowich had been resolved, and that the appellant was assenting to his continued representation by Mr. Janowich. *See id.* at 208, 26 A.3d 344 (quoting *Garner v. State,* 414 Md. 372, 390, 995 A.2d 694 (2010), for the proposition that "the Circuit Court was entitled to rely upon that statement [by the defendant's attorney that

'I'm still in the case'] and was not required to make further inquiry" regarding the defendant's request to discharge counsel).

As noted, after the appellant's letter of January 27, 2010, was received by the clerk of court, he appeared, represented by Mr. Janowich, at four pretrial hearings and at his two-day trial. Mr. Janowich also represented the appellant at his sentencing hearing. Notwithstanding the many opportunities the appellant had to bring to the court's attention any desire he might have had to discharge Mr. Janowich, he did not do so. The record is devoid of any showing of dissatisfaction by the appellant with Mr. Janowich beyond January 27, 2010. *See Northam,* 421 Md. at 208 n. 4, 26 A.3d 344 (suggesting that a defendant's expressed desire to obtain new counsel is negated by his subsequent consent to the lawyer's continued representation). We also presume that if the appellant had expressed to Mr. Janowich any ongoing desire to discharge him as counsel, at any time beyond January 27, 2010, Mr. Janowich would have acted in accordance with the obligations imposed by the Rules of Professional Conduct and brought the appellant's desire to the attention of the court. *Northam,* 421 Md. at 207–08, 26 A.3d 344. In the absence of any such action by counsel, the court reasonably could have inferred that the appellant had not told Mr. Janowich that he continued to want to discharge him as counsel. *See* Garner, 414 Md. at 390, 995 A.2d 694 (condoning the trial court's reliance upon counsel's assertion that he remained the defendant's representative for purposes of the action).

The appellant attempts to distinguish this case from *Northam* on the ground that his request to discharge counsel was not "buried" in the last paragraph of a lengthy motion—as was the case in *Northam*—but was "front and center, and exclusive" in a letter sent solely for that purpose. To be sure, the *Northam* Court emphasized that the defendant's criticism of the court for not addressing his request to discharge counsel was included in the last line in the last paragraph of an otherwise resolved motion for change of venue; and the defendant did nothing else to bring the undecided issue to the

court's attention in open court. *Northam,* 421 Md. at 206–07, 26 A.3d 344. We are persuaded, however, that the holding in *Northam* that a defendant waives the right to have the court address his request to discharge counsel if he fails to bring the request to the court's attention is not so narrowly drawn as to apply only to the factual circumstances in that case.

The appellant also argues that, unlike the defendant in *Northam,* who was brought before the court three times within a month after submitting his written request to obtain new counsel, the appellant did not return to court for more than five months after sending his letter. It is not unusual for a defendant awaiting a criminal trial to go five months between court appearances. The passage of time alone did not excuse the appellant's failure to bring his request to the attention of the court on the numerous occasions that he had an opportunity to do so.

■ We are similarly unpersuaded by the appellant's argument that the circuit court's failure to address his request for new counsel deprived him of his constitutional right to represent himself. In *Pinkney v. State, supra,* the Court held that a trial court has no obligation to inform a criminal defendant who proffers a non-meritorious request to discharge counsel of the defendant's right to proceed *pro se,* unless "the defendant [makes] a statement that reasonably indicates that he desires to invoke the right to self-representation." 427 Md. at 90, 46 A.3d 413. Here, the appellant's only communication to the court about counsel—his January 27, 2010 letter—said nothing about a desire to proceed *pro se.* On the contrary, he asked only that he be provided new or substitute counsel.

■ Had the appellant during any of the times he appeared in open court stated that he wished to discharge Mr. Janowich as counsel, the court would have been required by Rule 4–215(e) to further inquire into his reasons. *Pinkney,* 427 Md. at 87–88, 46 A.3d 413 (stating the generally accepted proposition that the requirements of Rule 4–215 are mandatory and require strict compliance) (citations omitted). The trial court did not address the appellant's January 27, 2010 request to

discharge counsel because the appellant did not take any action in open court to bring the representation issue to the court's attention either directly or by reminding the court of his January 27, 2010 letter. *See Northam*, 421 Md. at 206, 26 A.3d 344 (emphasizing that it is the duty of a defendant to bring undecided motions to the trial court's attention).

For the foregoing reasons, we conclude that the circuit court's receipt of appellant's original *pro se* letter of January 27, 2010, was insufficient to trigger an obligation on its part to conduct an inquiry into the appellant's reasons for wanting to discharge his attorney, pursuant to Rule 4–215(e). *See Northam*, 421 Md. at 207, 26 A.3d 344 (concluding that Rule 4–215 was not triggered, much less violated, by the trial court's failure to address the defendant's written requests to discharge counsel, which were not presented to the court as outstanding at any of the proceedings before his trial). We further conclude that the appellant's failure to raise the issue at any of his subsequent appearances before the trial court constituted a waiver of his January 27, 2010 request to discharge Mr. Janowich and obtain new counsel. *See id.; Joseph*, 190 Md.App. at 283, 988 A.2d 545 (suggesting that where such action would not be futile, defendant's failure to seek a ruling on a request to discharge counsel may be construed as waiver). *See also Grandison v. State*, 305 Md. 685, 765, 506 A.2d 580 (1986) ("By dropping the subject and never again raising it, [the defendant] waived his right to appellate review of this issue."); *Jackson v. State*, 52 Md.App. 327, 331–32, 449 A.2d 438 (1982) (stating that a defendant's failure to pursue a motion once it is filed, may result in waiver); *White*, 23 Md.App. at 155–56, 326 A.2d 219 (recognizing that a moving party has a responsibility to bring the court's attention to any unresolved issues).

## II.

### Sufficiency of the Evidence

Viewed in the light most favorable to the State, the evidence relating to Deputy Krulock's first attempt to arrest the appel-

lant showed that when the deputy tried to place the appellant in restraints the appellant drew his hands away and fled. Deputy Krulock explained what happened after the appellant fled from him:

We [Deputy Krulock and Deputy Schultz] continued to pursue [the appellant] on foot around the apartment building. We completely circled the apartment building that we were originally in front of. As we came around back to the area where we originally tried to detain him, one of the subjects as I mentioned earlier that we were talking to at the van, he came running along side the building and pursued [the appellant] in front of us and he ended up tackling him and holding him down on to the ground for us to catch up.

Q: And you were able to catch up at that time?

A: That's correct. As soon as we turned the corner we saw the subject that we were originally talking to holding [the appellant] down on the ground who was attempting to get away at the time and then we approached him. I advised for [the appellant] to get down on the ground and he refused to listen to my commands. Several times I then advised that he was going to be tased if he did not listen to commands. He continued to ignore my commands. At that point I tased him to gain compliance and detain him and end up getting the cuffs on him.

■ At the close of the State's case, defense counsel moved for judgment of acquittal on the charge of resisting arrest, arguing that the evidence was legally insufficient to prove that the appellant employed any physical force in attempting to evade the police. The trial court denied the appellant's motion, stating:

At this point the Court takes a look at the evidence in the light most favorable to the State against whom the motion is made. I think it is an issue of fact and that is to be resolved by the trier of fact. At this point it is even a lower standard. I'll certainly deny the motion. Once again, it is not the strongest or most forceful resisting I agree, but I

think that would go in the event of conviction more towards the mitigation issue. I mean, obviously he wasn't tussling or anything like that and most of it was a sprint to get away, but as [the prosecutor] pointed out under the case law as I understand it there was a touching and there was the force, which was his moving the hands away. So, I think that is sufficient.

The appellant renewed his motion for judgment of acquittal at the close of all the evidence, incorporating his prior arguments. The court again denied the motion, opining that whether the force employed by the appellant was sufficient to constitute resisting arrest was a question of fact for the jury.

Thereafter, the trial court instructed the jury regarding the offense of resisting arrest:

In order to convict the Defendant of resisting arrest, the State must prove, one, that a law enforcement officer attempted to arrest the Defendant; two, that the Defendant knew that a law enforcement officer was attempting to arrest him; three, that the officer had reasonable grounds to believe that the Defendant had committed CDS possession; and, four, that the Defendant refused to submit to the arrest and resisted the arrest by force.

The trial court's instruction corresponds to the pattern jury instruction for the offense. MPJI–Cr. § 4:27.1.

The often repeated test for sufficiency of the evidence in a criminal case is "[w]hether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Rich v. State*, 205 Md.App. 227, 235, 44 A.3d 1063 (2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Coleman*, 423 Md. 666, 672, 33 A.3d 468 (2011)). It is the responsibility of the fact-finder in any given case, "to 'choose among differing inferences that might possibly be made from a factual situation,'" and an appellate court "must give deference to all reasonable inferences [that] the fact-finder draws, regardless of whether [the appellate court] would have chosen

a different reasonable inference." *State v. Suddith*, 379 Md. 425, 430, 842 A.2d 716 (2004) (citations and footnote omitted). Our focus in assessing sufficiency of the evidence

is not [on] whether the verdict below was in accord with the weight of the evidence, but rather, whether there was sufficient evidence at trial "that either showed directly, or circumstantially, or supported a rational inference of facts which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt."

*State v. Stanley*, 351 Md. 733, 750, 720 A.2d 323 (1998) (quoting *State v. Albrecht*, 336 Md. 475, 479, 649 A.2d 336 (1994)). Accordingly, we independently review the evidence adduced at trial to determine whether it was legally sufficient to sustain the conviction. *See e.g. Wilder v. State*, 191 Md. App. 319, 335, 991 A.2d 172 (2010), cert. denied, 415 Md. 43, 997 A.2d 792 (2010) (stating that appellate courts "review de novo the issue of whether the evidence is sufficient to sustain [the] convictions."); *Polk v. State*, 183 Md.App. 299, 306, 961 A.2d 603 (2008) ("An assessment of the legal sufficiency of the evidence is not an evidentiary issue but a substantive issue, with respect to which an appellate court makes its own independent judgment, as a matter of law.").

The appellant contends the evidence at trial was legally insufficient to establish beyond a reasonable doubt that he employed force against Deputy Krulock when he initially fled; therefore, his resisting arrest conviction cannot be sustained based on that initial encounter. He further contends that any force he may have used to resist the bystander's efforts to hold him down is "irrelevant for purposes of proving the charge of resisting arrest" because "there was no evidence presented that the bystander was a police officer."

The State concedes that the evidence that the appellant pulled his hands away from Deputy Krulock and fled is legally insufficient to prove use of force, and therefore to sustain his conviction for resisting arrest. The State asserts, however, that the appellant's subsequent use of force against the by-stander as Deputy Krulock was ordering him to "get down on

the ground" so he could be handcuffed was sufficient to sustain his conviction.

 The offense of resisting arrest, codified at Md. Code (2004, 2011 Cum.Supp.), section 9–408(b)(1) of the Criminal Law Article ("Cr.L."), retains its common law elements. *See, e.g., McNeal v. State,* 200 Md.App. 510, 526, 28 A.3d 88 (2011) ("Section 9–408 did not . . . change the elements as they existed at common law for the crime of resisting arrest."). The statute, in pertinent part, provides that "[a] person many not intentionally resist a lawful arrest." Cr.L. § 9–408(b)(1). To convict a defendant of resisting arrest, the State must prove the following elements beyond a reasonable doubt:

(1) that a law enforcement officer arrested or attempted to arrest the defendant;

(2) that the officer had probable cause to believe that the defendant had committed a crime, *i.e.,* that the arrest was lawful; and

(3) that the defendant refused to submit to the arrest [and] resist[ed] the arrest by force.

*Rich,* 205 Md.App. at 240, 44 A.3d 1063 (citation omitted). The State also must show that the defendant knew that a police officer was trying to arrest him and that the defendant had the necessary intent to resist the arrest. *Id.* at 239 n. 3, 240, 44 A.3d 1063.

 "The degree of 'force' that is required to find a defendant guilty of resisting arrest is the same as the 'offensive physical contact' that is required to find a defendant guilty of the battery variety of second degree assault." *Rich,* 205 Md.App. at 249, 44 A.3d 1063 (quoting *Nicolas v. State,* 426 Md. 385, 407, 44 A.3d 396 (2012)). Resistance does not encompass mere flight from an arresting officer. *Id.* at 253, 44 A.3d 1063.

 The plain language of the statute does not specify that a defendant may be found guilty of resisting arrest only if he employs force against the police officer who is attempting to arrest him. Cr.L. § 9–408(b)(1). Nor does the relevant

case law hold that the offense is meant to be so limited. *See e.g. Cooper v. State*, 128 Md.App. 257, 265–66, 737 A.2d 613 (1999) (stating "[t]he offense of resisting arrest ... requires proof that the appellant intentionally made physical contact **with another** and that contact was not legally justified ...." (emphasis added)). All that must be shown is that a legal arrest was resisted by force. Cr.L. § 9–408(b)(1). The necessary force may be employed against someone other than the police officer who is attempting to effectuate the arrest.

The jury was properly instructed on all the elements of the crime of resisting arrest. Deputy Krulock testified that the appellant persisted in struggling to escape from the bystander who had restrained him until the police arrived, and then continued to resist despite Deputy Krulock's repeated orders to "get down on the ground" and warnings that if he did not comply he would be tased so the officers could put him in handcuffs.

From this evidence reasonable jurors could find beyond a reasonable doubt that Deputy Krulock was attempting to arrest the appellant and had probable cause to arrest him; that the appellant knew Deputy Krulock was a law enforcement officer and that he was attempting to arrest him; that the appellant refused to submit to the arrest; and that the appellant resisted Deputy Krulock's attempt to arrest him by using force against the citizen who had tackled him, thus necessitating the use of a taser by the deputy to effectuate the arrest. These findings satisfied the elements of the crime of resisting arrest.

**JUDGMENTS OF THE CIRCUIT COURT FOR HARFORD COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**