**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 12-4603**

───────────

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

MARCEL APARICIO-SORIA,

        Defendant - Appellant.

───────────

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Deborah K. Chasanow, Chief District Judge. (8:11-cr-00616-DKC-1)

───────────

Argued: March 22, 2013          Decided: July 5, 2013

───────────

Before WILKINSON and DAVIS, Circuit Judges, and Jackson L. KISER, Senior United States District Judge for the Western District of Virginia, sitting by designation.

───────────

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Kiser joined. Judge Davis wrote an opinion, concurring in part and dissenting in part.

───────────

**ARGUED:** Sapna Mirchandani, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant. Paul Nitze, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Baltimore, Maryland for Appellant. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

WILKINSON, Circuit Judge:

In sentencing defendant Marcel Aparicio-Soria for illegally reentering the United States, the district court applied the "crime-of-violence enhancement" in U.S.S.G. § 2L1.2(b)(1)(A)(ii) on the basis of a previous Maryland conviction for resisting arrest. Aparicio-Soria challenges that decision here. Adopting the categorical approach, we find that the Maryland offense of resisting arrest constitutes a crime of violence under § 2L1.2. We therefore affirm the judgment of the district court.

I.

In April 2012, Aparicio-Soria pleaded guilty in the U.S. District Court for the District of Maryland to illegally reentering the United States after having been previously convicted of an aggravated felony and deported, see 8 U.S.C. § 1326(a) and (b)(2). While the conviction that had prompted his removal was for theft, the main issue before the district court concerned another prior state conviction -- for resisting arrest under Md. Code, Crim. Law § 9-408(b)(1).

The question was whether Maryland's resisting arrest offense qualifies as a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii). That provision calls for the application of a twelve- or sixteen-level sentencing enhancement (depending

2

on criminal history) for any defendant convicted of illegally reentering or staying in the country who was "previously . . . deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence." The pertinent commentary, in turn, defines "crime of violence" to include several enumerated offenses and "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). Only the latter part of this definition, which is known as the "force clause," is at issue here, as there is no dispute that defendant's conviction is not an enumerated offense.

The district court held that defendant's resisting arrest conviction satisfies the force clause and thus constitutes a crime of violence. The court first employed the so-called "categorical approach" for determining the applicability of sentencing enhancements, which stems from <u>Taylor v. United States</u>, 495 U.S. 575 (1990). The court found, however, that the type of force required to sustain a conviction for resisting arrest under Maryland law is insufficient, as a general matter, to trigger the enhancement. The court then turned to the "modified categorical approach," examining the factual statement incorporated into the charging document to determine whether the underlying charge involved a sufficient element of force.

3

In that declaration, titled "Application for Statement of Charges," a law enforcement officer attested to the following facts. On May 3, 2006, shortly before midnight, another officer witnessed a pick-up truck driven by the defendant "swerv[ing] over the road" and "cross[ing] the painted lane markings several times." The officer "attempted to stop the vehicle by activating the emergency lights and siren in his agency marked police cruiser," but the defendant took flight -- "accelerat[ing] at a high rate of speed," "ma[king] two u-turns in the median," "swerv[ing] towards and tr[ying] to strike" an officer, and colliding with a vehicle belonging to a civilian. Officers were eventually "able to deploy stop sticks which deflated both [of the truck's] passenger side tires," and shortly thereafter, Aparicio-Soria stopped the truck in a hotel's parking lot and fled on foot into the lobby, where a struggle ensued. He first "fail[ed] to place his hands behind his back and actively resist[ed]" the officers. The officers released a K-9 dog and shocked the defendant with a Taser three times, but he continued "resisting and assaulting" them "for approximately two minutes." Finally, he "bit the right hand" of one of the officers. Aparicio-Soria was ultimately subdued and transported to a local hospital. An officer smelled alcohol on his breath and administered a field sobriety test at the hospital, which the defendant failed.

4

The district court concluded that because Aparicio-Soria had assaulted the officers during the hotel confrontation (and bitten one of them, in particular), the type of force involved was sufficient to render his resisting arrest conviction a crime of violence. As a result, the court recalculated his Guidelines range to include the sixteen-level crime-of-violence enhancement pursuant to § 2L1.2(b)(1)(A)(ii) in place of the eight-level "aggravated-felony enhancement" pursuant to § 2L1.2(b)(1)(C) that the pre-sentence report had recommended. This resulted in raising the advisory Guidelines range from between twenty-four and thirty months to between fifty-seven and seventy-one months. The court then granted a downward variance based on the factors in 18 U.S.C. § 3553(a) and ultimately sentenced the defendant to thirty-six months of incarceration.

## II.

In appealing his sentence, Aparicio-Soria presses several arguments for why the district court should not have applied the U.S.S.G. § 2L1.2(b)(1)(A)(ii) crime-of-violence enhancement to his Maryland resisting arrest conviction. First, he contends, the district court erred in proceeding beyond the categorical approach and purporting to apply the modified categorical approach. Second, he asserts that even if the modified categorical approach is applicable, the district court employed

5

it incorrectly by focusing on the concrete facts underlying his crime rather than the elements required for the conviction. Finally, the defendant argues that, in any event, the conduct described in the charging document was insufficient to demonstrate the necessary level of force. This is so, he explains, because that document contains multiple theories of how he may have committed the offense, and it is impossible to know to which theory or theories he ultimately pleaded guilty.

The government counters each of these points. Additionally, because this court can affirm the judgment below on any ground supported by the record, United States v. McHan, 386 F.3d 620, 623 (4th Cir. 2004), the government contends that the district court was mistaken, as an initial matter, in concluding under the categorical approach that Maryland resisting arrest law does not require a type of force sufficient to satisfy the force clause of § 2L1.2 cmt. n.1(B)(iii). For the following reasons, we find this argument persuasive, and we therefore affirm the judgment on the basis of a categorical analysis without reaching the other questions discussed above.

III.

The categorical approach constitutes the proper vehicle for resolving the issues presented by this appeal. The modified categorical approach "serves a limited function: It helps

effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." Descamps v. United States, No. 11-9540, slip op. at 5 (U.S. June 20, 2013). In this case, Aparicio-Soria's prior conviction is predicated on a nondivisible statute; consequently, the modified approach "has no role to play." Id. at 9. As a result, there is no need for this Court to attempt to parse the record associated with Aparicio-Soria's prior conviction or to rely on attenuated factual inferences with respect to the conduct underlying that conviction. See id. at 13-15. Instead, the categorical approach merely requires that we compare (1) the elements of the offense category contained in the force clause of the crime-of-violence enhancement and (2) the elements of the offense of resisting arrest under Maryland law. See id. at 1, 5; Taylor v. United States, 495 U.S. 575, 598-602 (1990). We proceed to consider these matters in turn.

A.

When interpreting a sentencing enhancement under the categorical approach, a court must first establish the "generic, contemporary meaning" of the predicate offense in question, which generally corresponds to the "sense in which the term is now used in the criminal codes of most States." Taylor, 495 U.S. at 598. This method makes good sense with respect to

specifically enumerated offenses -- such as "[m]urder, manslaughter, kidnapping, [and] aggravated assault," to name a few from the enhancement at issue here, U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). The method, however, must be adapted slightly where the offense in question is stated more broadly in a force clause, a "residual clause," or the like. This is because there is little to no "sense in which the term is now used in the criminal codes of most States" where the "term" in question is, for instance, the force clause at issue here (which, to repeat, encompasses "any other offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another," id.). See United States v. Torres-Miguel, 701 F.3d 165, 167-68, 170 (4th Cir. 2012).

Nevertheless, Taylor still proves instructive, and this court has thus employed the categorical approach in various force and residual clause contexts. See, e.g., id. at 167-68 (applying Taylor to force clause at issue here); United States v. Seay, 553 F.3d 732, 736-37 (4th Cir. 2009) (applying Taylor to force and residual clauses in U.S.S.G. § 4B1.2(a)). At bottom, Taylor established the principle that enhancement predicates "must have some uniform definition independent of the labels employed by the various States' criminal codes." 495 U.S. at 592. We respect that principle by first determining what the force clause of the crime-of-violence enhancement means

8

as a general matter, apart from how any individual jurisdiction defines any given offense or enhancement, and then asking whether the elements of the conviction at issue align with that uniform definition.  See Johnson v. United States, 130 S. Ct. 1265, 1269 (2010) ("The meaning of 'physical force' in [18 U.S.C.] § 924(e)(2)(B)(i) is a question of federal law, not state law.  And in answering that question we are not bound by a state court's interpretation of a similar -- or even identical -- state statute.").

Because the two provisions employ identical language, the parties agree that precedent interpreting the force clause in the definition of the "violent felony" portion of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(i), is pertinent to our analysis of the force clause in the crime-of-violence enhancement.  Compare id. (encompassing any offense that, inter alia, "has as an element the use, attempted use, or threatened use of physical force against the person of another"), with U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (same).  Indeed, this court has recently reiterated that "[w]e rely on precedents evaluating whether an offense constitutes a 'crime of violence' under the Guidelines interchangeably with precedents evaluating whether an offense constitutes a 'violent felony' under the ACCA, because the two terms have been defined in a manner that is substantively identical."  United States v.

9

*Gomez*, 690 F.3d 194, 197 (4th Cir. 2012) (internal quotation marks omitted).

We thus recognize, in particular, the Supreme Court's exposition of the ACCA's force clause in *Johnson*. There, the Court held that because the ACCA "does not define 'physical force,' . . . [we] give the phrase its ordinary meaning." 130 S. Ct. at 1270. Following examination of several dictionary entries and exploration of the pertinent statutory landscape, *Johnson* concluded: "We think it clear that in the context of a statutory definition of '<u>violent</u> felony,' the phrase 'physical force' means <u>violent</u> force -- that is, force capable of causing physical pain or injury to another person." *Id.* at 1271. The Court accordingly held that "the slightest offensive touching" -- which could fulfill the "force element" of the common-law crime of battery -- was insufficient. *Id.* at 1270. Thus, the enhancement was deemed inapplicable, as the defendant had been convicted of a battery offense requiring only the "most 'nominal contact,' such as a 'ta[p] . . . on the shoulder without consent.'" *Id.* at 1269-70, 1274 (alterations in original).

In light of this ruling, the question we must answer is whether Maryland's resisting arrest offense "has as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 2L1.2 cmt. n.1(B)(iii), where "physical force" means "<u>violent</u> force -- that

10

is, force capable of causing physical pain or injury to another person," Johnson, 130 S. Ct. at 1271. As the ensuing analysis demonstrates, we conclude that it does.

B.

Aparicio-Soria was convicted of resisting arrest pursuant to Md. Code, Crim. Law § 9-408(b)(1), which provides that "[a] person may not intentionally . . . resist a lawful arrest." In determining the applicability of sentencing enhancements based on state convictions, federal courts are bound by the relevant state courts' interpretations of the predicate crime. Johnson, 130 S. Ct. at 1269 (citing Johnson v. Fankell, 520 U.S. 911, 916 (1997)). In Rich v. State, the Maryland Court of Special Appeals made clear that the statutory offense of resisting arrest includes three elements harkening back to the common law: (1) "that a law enforcement officer arrested or attempted to arrest the defendant"; (2) "that the officer had probable cause to believe that the defendant had committed a crime, i.e., that the arrest was lawful"; and (3) that the defendant both "refus[ed] to submit" to the arrest "and resist[ed] by force or threat of force." 44 A.3d 1063, 1071, 1077 (Md. Ct. Spec. App. 2012). The meaning of the third requirement, called the "resistance element," is at issue here.

1.

11

As an initial matter, the defendant contends that Rich, which was issued in 2012, demonstrates that at the time he was convicted in 2006, Maryland law did not necessarily require force as part of the resistance element. This argument fails.

To be sure, Rich explained that some previous opinions, "while not focusing specifically on whether force is a required element of resisting arrest, have sent mixed signals as to whether force is necessary or whether simple failure to submit to an arrest is sufficient to constitute the crime." 44 A.3d at 1071. The court, however, called the first of those cases "aberrant" and ultimately concluded -- based on treatises, the "original formulation" of the common-law elements, "the consistently forceful character of the conduct at issue in Maryland's resisting arrest case law," and certain individual opinions -- that "both a refusal to submit to lawful arrest and resistance by force or threat of force are necessary to commit the offense of resisting arrest in Maryland." Id. at 1077. Rich in no way characterized this holding as breaking new ground, instead making clear that it merely clarified what the law had always been. Indeed, the court stated that the underlying "wrongful conduct reported in the Maryland case law, in which convictions for resisting lawful arrests have been upheld, has never consisted simply of . . . actions that did not amount to 'resistance by force.'" Id. at 1082 (emphasis added).

12

Having thus established that force was as much an element of the Maryland crime of resisting arrest at the time of defendant's conviction as it is now, we must determine what type of force suffices -- and whether such force satisfies the standards of the crime-of-violence enhancement.

2.

Aparicio-Soria maintains that the force capable of sustaining a Maryland resisting arrest conviction falls short of the force required for application of the crime-of-violence enhancement in two interconnected ways. First, he asserts that even de minimis force is adequate, thus rendering the offense overbroad in relation to Johnson's interpretation requiring "violent force -- that is, force capable of causing physical pain or injury to another person." 130 S. Ct. at 1271. Second, he claims that force applied to mere objects is enough, thus rendering the offense overbroad under the enhancement's plain text requiring "physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (emphasis added). These contentions rest on a misguided attempt to parse the pertinent precedent far too finely. An abundance of evidence makes manifest that state law demands violent force directed against the person of another.

Rich's comprehensive canvassing of relevant authority provides several particularly instructive data points. First,

13

the court expressly described the offense of resisting arrest as "undergird[ed]" by conduct having a "forceful and violent character." 44 A.3d at 1072 (emphasis added). Second, the court interpreted a decision from Maryland's highest court as stating that "[t]he specific conduct punishable [as the broader offense of obstructing a law enforcement officer], in contrast to conduct punishable as resisting arrest, did not need to rise to the level of violence or resistance and could be verbal in nature," thus implying that "violence" and "resistance" may be interchangeable in this context. Id. at 1073 (emphasis added) (citing Busch v. State, 426 A.2d 954 (Md. 1981)). Likewise, in further distinguishing the offense of obstruction from that of resisting arrest, the court quoted precedent stating that to constitute obstruction, "it is not necessary that there be an actual or technical assault upon the officer," plainly indicating that force directed against the person of another is required for the offense of resistance. Id. at 1078 (emphasis added) (quoting Titus v. State, 32 A.3d 44, 53 (Md. 2011)).

Third, in concluding that mere flight fails the force requirement, Rich held that "[t]he purpose of criminalizing resistance to a lawful arrest is to protect police officers from the substantial risk of physical injury." Id. at 1080. Rich cited the Model Penal Code's resisting arrest offense, which requires the creation of "a substantial risk of bodily injury to

14

the public servant or anyone else, or employ[ment of] means justifying or requiring substantial force to overcome the resistance." Id. (quoting Model Penal Code § 242.2). The commentary, the court emphasized, states that "[t]he effect of this language is to exempt from criminal liability non-violent refusal to submit to arrest and such minor forms of resistance as running from a policeman or trying to shake free from his grasp." Id. (quoting Model Penal Code § 242.2 cmt. 2).

Accordingly, the central point of Rich's extended explication of resisting arrest was to make clear that the offense is tailored to safeguarding individuals, especially law enforcement officers, from bodily harm. The court explicitly noted "[t]he dangers of proscribing conduct too broadly for purposes of resisting arrest" and stated that

> the charge of resisting arrest is amenable to "grave abuse" by police officers and prosecutors: "Minor acts of evasion and resistance are sufficiently ambiguous to give rise to honest error, sufficiently elusive to encourage false allegations, and sufficiently commonplace to afford general opportunity for discriminatory enforcement."

Id. (quoting Model Penal Code § 242.2 cmt. 2). Rich further confirmed that this police-protective policy limits resisting arrest to conduct that is both violent and directed against the person of another by endorsing an opinion from a different jurisdiction holding that actions "not . . . directed against the officers" and lacking "any immediate potential for violence"

15

failed to qualify as a similar crime. Id. at 1079 (quoting Coghill v. United States, 982 A.2d 802, 807 (D.C. 2009)).

Finally, Rich cited the facts from a number of Maryland decisions as exemplifying "resistance by force," id. at 1082 -- describing the defendant's conduct in Nicolas v. State, 44 A.3d 396 (Md. 2012), as "pushing, hitting, and struggling with police"; in Purnell v. State, 827 A.2d 68 (Md. 2003), as "pushing back against officers attempting to handcuff him"; in Barnhard v. State, 602 A.2d 701 (Md. 1992), as "'scuffling' with and swinging at police"; in Cooper v. State, 737 A.2d 613 (Md. Ct. Spec. App. 1999), as "pulling from officer's grasp and punching him repeatedly in the head"; and in Washington v. State, 589 A.2d 493 (Md. Ct. Spec. App. 1991), as "striking officer, knocking him off balance, and running away." Likewise, Rich repeatedly invoked the conduct underlying the classic English case of Regina v. Bentley, 4 Cox C.C. 406, 406-08 (1850), to illustrate the offense, retelling how the defendant "violently assaulted and seriously injured" an officer and was subsequently indicted for "cutting and wounding with intent to resist his lawful apprehension." 44 A.3d at 1072-74. The court thus relied exclusively on conduct that was indubitably both violent in character and directed against the person of another in characterizing the essential nature of resisting arrest. In

16

doing so, it demonstrated that lesser or differently aimed force cannot suffice.

3.

It should be clear from the comprehensive discussion in the Rich decision that a conviction for resisting arrest requires the use, attempted use, or threatened use of violent force against another person. As Descamps makes clear, the categorical approach requires an elements-based rather than a conduct-based methodology. Slip op. at 5. The conduct underlying prior state court decisions, however, may provide probative evidence of how the law defines the elements of the offense in question. See Moncrieffe v. Holder, 133 S. Ct. 1678, 1686-87 (2013) (looking to underlying conduct in state court decisions to construe the elements of a state drug offense); United States v. Diaz-Ibarra, 522 F.3d 343, 352-53 (4th Cir. 2008) (discussing the facts underlying a number of state cases at length and relying on those decisions as "typical of the kind of conduct to which [the statute in question] is applied" in order to find the existence of an element of the offense). In this case, that evidence is overwhelming.

Since 1950, the Maryland appellate courts have issued opinions describing the facts underlying convictions for resisting arrest (including juvenile delinquency determinations) in numerous cases. Every case, save one, demonstrates that the

17

defendant acted in a manner involving violent force directed against the person of another -- indeed, against a law enforcement officer. The single outlier, of course, is Rich, in which the defendant's conviction was overturned on account of the fact that he simply attempted to flee and stiffened his arms as officers tried to handcuff him. Id. at 1066, 1070.

The cases demonstrate a singular recognition on the part of Maryland appellate courts that the offense of resisting arrest must not be allowed to leap its proper bounds. A broad array of precedent from the Maryland Court of Appeals illuminates the application of violent force against the person of another needed for a resisting arrest conviction: Nicolas, 44 A.3d at 399-401 (defendant "pushed" officer, "hit [another] in the face," fought with one for "two to three minutes" including "grabb[ing] each other and . . . pushing each other against the walls and hitting each other," continued "fighting" and "struggl[ing]" "the whole way" to police car); Arthur v. State, 24 A.3d 667, 670 (Md. 2011) ("struggle[d] as three officers attempted to arrest him," "continued kicking and pulling," caused officer to sprain ankle); Wilson v. State, 975 A.2d 877, 881-82 (Md. 2009) ("struggle[d]" as officer attempted to place handcuffs); Polk v. State, 835 A.2d 575, 577 (Md. 2003) ("bit [officer's] arm, breaking the skin on his wrist"); Purnell, 827 A.2d at 71 ("pushed [o]fficer . . . into a wall, "went to the

18

ground" with another officer); Johnson v. State, 749 A.2d 769, 769 (Md. 2000) ("kicked and flailed" when officers attempted to effect arrest); In re Tariq A-R-Y, 701 A.2d 691, 692 (Md. 1997) ("punched and kicked" officers); Clark v. State, 629 A.2d 1239, 1241 (Md. 1993) ("scuffle[d]" with officer); Barnhard, 602 A.2d at 703 (threatened that officers would "have a shooting," threatened to kill one, "balled his fists," "started swinging [a] loose handcuff" at them, "scuffle[d]" with them); Shifflett v. State, 572 A.2d 167, 168 (Md. 1990) ("fight ensued" when bail bondsmen attempted to effect arrest); Trusty v. State, 521 A.2d 749, 752 (Md. 1987) ("struggle[d]" with officers); Diehl v. State, 451 A.2d 115, 117 (Md. 1982) ("kick[ed] and struggle[ed]," "again began kicking," caused injury to one officer's finger and bruises to another's legs); Rodgers v. State, 373 A.2d 944, 945 (Md. 1977) ("grabbed [o]fficer . . . around the waist," "wielded a straight edged razor and slashed [o]fficer . . . across the arm"); Downs v. State, 366 A.2d 41, 43 (Md. 1976) ("scuffle ensued" when officer attempted to effect arrest); Palacorolle v. State, 211 A.2d 828, 829 (Md. 1965) ("while enroute to the police station the appellant lunged at [o]fficer . . . [,] attempting to strike and kick him").

Numerous decisions from Maryland's intermediate appellate court underscore the very same point: Britton v. State, 30 A.3d 236, 239 (Md. Ct. Spec. App. 2011) ("violently resisted,"

19

"punch[ed] and kick[ed] the officers," "continued to struggle" despite being "tasered two more times"); Jones v. State, 924 A.2d 336, 339-40 (Md. Ct. Spec. App. 2007) ("swerved" in vehicle "directly toward an officer, causing him to dive out of the way to avoid being struck"); Lamb v. State, 786 A.2d 783, 786 (Md. Ct. Spec. App. 2001) ("punched [officer] three or four times"); Grant v. State, 786 A.2d 34, 38 (Md. Ct. Spec. App. 2001) (engaged in "a wrestling match and a fight" with officers, "kicked" and "struck [one] several times [with his] arms and legs"); Cooper, 737 A.2d at 615-16 ("punched [officer] repeatedly in the head," "struck [another] in the face"); In re Jason Allen D., 733 A.2d 351, 355 (Md. Ct. Spec. App. 1999) (discussed below), overruled on other grounds by In re Antoine M., 907 A.2d 158 (Md. 2006); In re Albert S., 664 A.2d 476, 479 (Md. Ct. Spec. App. 1995) ("made a 'fake motion' as if he was going to hit the officer," "pushed up against the officer," "attempted to kick the officers"); Briggs v. State, 599 A.2d 1221, 1223 (Md. Ct. Spec. App. 1992) ("threw his arms up, striking [officer] and knocking [officer's] watch off his wrist," "was fighting violently," "kicked [another officer] close to the groin"); Washington, 589 A.2d at 495 ("struck [o]fficer . . . in the shoulder and knocked him off balance"); Thomas v. State, 582 A.2d 586, 586 (Md. Ct. Spec. App. 1990) ("During the struggle, a deputy was stabbed with a ballpoint pen

20

and a police officer was struck."); Johnson v. State, 542 A.2d 429, 432 (Md. Ct. Spec. App. 1988) ("struck the detective in the stomach and again in the chest"); Curtin v. State, 483 A.2d 81, 84 (Md. Ct. Spec. App. 1984) ("In the course of this melee, [one officer] was struck and kicked and [another] was bitten by the appellant."); Hoes v. State, 368 A.2d 1080, 1082 (Md. Ct. Spec. App. 1977) (discussed below); Kraft v. State, 305 A.2d 489, 491 (Md. Ct. Spec. App. 1973) (discussed below), overruled on other grounds by Goode v. State, 398 A.2d 801 (Md. Ct. Spec. App. 1979); Jordan v. State, 300 A.2d 701, 702 (Md. Ct. Spec. App. 1973) ("pushed [officer] out of the way," "struggle then ensued"); Tillery v. State, 280 A.2d 302, 303 (Md. Ct. Spec. App. 1971) (attempted to punch one officer and kick another, "tore the badge of a [third officer's] uniform and clenched it in his right hand with the pin . . . in an outward position, swinging . . . in a violent manner at each of the three [o]fficers"); Lyles v. State, 269 A.2d 178, 180 (Md. Ct. Spec. App. 1970) ("tussl[ed] on the floor and wrestl[ed]" with security guard, "bumped [guard] on the side of the head [with] nightstick"); Streeter v. State, 248 A.2d 119, 120 (Md. Ct. Spec. App. 1968) ("continuously struggl[ed] to break away" from officer); Williams v. State, 244 A.2d 619, 621 (Md. Ct. Spec. App. 1968) ("When the officer attempted to place handcuffs on the appellant, a scuffle arose, with both the officer and the

21

appellant falling to the floor, during which the appellant kicked [the officer].”); <u>Carwell v. State</u>, 232 A.2d 903, 905 (Md. Ct. Spec. App. 1967) (“became very violent,” “struggled for four or five minutes,” “bit” one officer and otherwise “injured” another); <u>McIntyre v. State</u>, 232 A.2d 279, 280 (Md. Ct. Spec. App. 1967) (one defendant “struggl[ed]” with officer; other defendant got “on top of” officer, “hit[]” him “in the jaw,” “took another swing at [him] under arrest”); <u>McGee v. State</u>, 229 A.2d 432, 433 (Md. Ct. Spec. App. 1967) (“struggled” with officers, “flail[ed] his arms and push[ed officers] away,” “pull[ed], push[ed] and la[id] hold of . . . officer”).

We find in this lengthy and unbroken line of cases yet further evidence that Maryland law requires violent force against the person of another in order to justify a charge of resisting arrest. It is, moreover, evidence that Aparicio-Soria is unable to counter.[1] Indeed, he challenges just three of those

_____

[1] The Maryland Court of Appeals’ decision in <u>Nicolas</u>, 44 A.3d 396, upon which Aparicio-Soria relies, does not persuade us otherwise. <u>Nicolas</u> neither affirmed nor even referenced any actual resisting arrest conviction for conduct that was not both violent and directed against the person of another. The correctness of the defendant’s conviction for resisting arrest was not even in question; rather, as relevant here, the court limited its grant of certiorari to the pure sentencing question whether the defendant’s “convictions for second degree assault . . . merge into his conviction for resisting arrest.” <u>Id.</u> at 398. And, in any event, the actions supporting the resisting arrest charge included pushing, punching, and generally brawling with police officers. <u>Id.</u> at 399–401. (Continued)

three-dozen-plus decisions, arguing that "there is no indication that the defendant[s] used violent force at all." Appellant's Reply Br. 4. Examination of this small handful of opinions, however, reveals that although they may be less explicit than the government suggests, the defendants' actions were in fact portrayed as violent and confrontational. In any event, the conduct described in these cases was at most ambiguous -- and, therefore, clearly insufficient to outweigh the mass of case law addressed above.

First, In re Jason Allen D. described how the defendant "pulled his arms into his stomach very tightly" to avoid being handcuffed. 733 A.2d at 355. After officers "took him to the ground," he "continued to resist and pull away." Id. "[I]t took approximately one-and-one-half minutes to subdue him," id., which indicates that he actively struggled against the officers.

_____

Indeed, Rich specifically emphasized the vicious nature of the Nicolas defendant's conduct in coming to its conclusion on resisting arrest described above. 44 A.3d at 1076, 1082.

Hypotheticals (such as an individual holding a door closed in order to prevent an officer from arresting him, a scenario to which Nicolas adverted, 44 A.3d at 408 n.5) are just that: hypotheticals. As demonstrated, a mass of Maryland precedent makes clear that resisting arrest involves violent conduct directed against the person of another. We cannot disrespect decades of actual state court decisions by broadening the elements of an offense that the Maryland courts have taken such pains to narrow.

Second, although Hoes stated that the difficulty arresting the defendant was attributable at least in part to his size and disability, the court also made clear that officers were able to "satisfactorily consummate[]" the arrest only after engaging in a "fracas" with the defendant, plainly suggestive of a violent confrontation. 368 A.2d at 1082. Finally, Kraft stated that "[a] struggle ensued" when officers attempted to arrest the defendant, describing him as "extremely hostile and foul" and "just wild and fighting, belligerent and screaming." 305 A.2d at 491. The defendant also "threatened" the officers. Id. To be sure, many of the details disclosed by the court involved the defendant verbally berating the officers, id., but the court plainly indicated that he also acted physically aggressive toward them.

In sum, Rich crystallized the foundational concept of Maryland criminal law -- as confirmed by case after case -- that the offense of resisting arrest is narrowly focused and designed to capture only conduct that is both violent and directed against the person of another. By urging an untenably broad reading of the pertinent precedent, the defendant seeks to have this court declare that state law actually runs in the opposite direction, widening the basis of the offense. The dissent likewise is unable to identify even a single outlier where a Maryland appellate court sustained or even described an actual

24

resisting arrest conviction in the absence of violent force. The dissent surprisingly resists the commendable efforts of the Maryland courts to make certain that this particular offense does not metastasize and apply casually to conduct less serious than the direction of violent force aimed at another, almost always the officer attempting to make the arrest.[2] We decline to depart from the clearly defined center of gravity of state law

---

[2] First, the dissent asserts that Williams v. State, 57 A.3d 508 (Md. Ct. Spec. App. 2012), cert. granted, 62 A.3d 730 (Md. 2013), affirmed a resisting arrest conviction "based on acts not constituting violent force." Post at 40, 41 n.10. That decision, however, explicitly stated that the defendant "struggl[ed] to escape," "thus necessitating the use of a taser by the deputy to effectuate the arrest." Williams, 57 A.3d at 520. The question before the court was not whether the defendant's conduct was sufficiently forceful but, rather, whether force directed against a bystander assisting with the arrest (instead of against a law enforcement officer himself) could suffice. Id. at 519-20. Second, the dissent points to Olson v. State, 56 A.3d 576 (Md. Ct. Spec. App. 2012), as purportedly involving "non-violent force." Post at 41 n.10. The Olson court, however, made clear that the defendant "charg[ed] at the officers" -- that is, that he approached them "with his hands raised and appeared to be in an aggressive manner as if he was going to punch them or wrestle with them." 56 A.3d at 584 (internal quotation marks and brackets omitted). The court also made clear that the defendant had "conced[ed] that the . . . element [requiring] resistance 'by force or threat of force,' was satisfied." Id. at 589 n.5. Finally, the dissent clings to McNeal v. State, 28 A.3d 88 (Md. Ct. Spec. App. 2011), aff'd on other grounds, 44 A.3d 982 (Md. 2012). Post at 41 n.10. But the only pertinent description of the defendant's conduct in McNeal simply states that "[w]hen a[n] officer attempted to handcuff [him], [he] resisted, got free, and fled." 28 A.3d at 90. This bare recitation is far too opaque to determine whether the defendant's actions were violent or not.

25

and, consequently, find that defendant's conviction falls within the force clause of the crime-of-violence enhancement.

4.

One last point warrants discussion. In Descamps, the Supreme Court reserved the question of "whether, in determining a crime's elements, a sentencing court should take account not only of the relevant statute's text, but of judicial rulings interpreting it." Slip op. at 20. For several reasons, we do not think the reservation in Descamps should be interpreted to prohibit our or, for that matter, the dissent's reference to state case law in construing the elements of the state crime at issue here. For one thing, an unqualified demand that federal courts must decide the reach and meaning of state statutory crimes without the benefit of state court decisions would constitute an affront to our federal system, in effect substituting the judgment of federal judges for that of state judges whose familiarity with the elements of predicate offenses under state law surpasses our own. See Descamps, slip op. at 2 (Kennedy, J., concurring) (expressing federalism concerns in a related context).

Moreover, the Supreme Court itself has on prior occasions repeatedly looked to state judicial rulings when interpreting the meaning of a state statute for purposes of the categorical approach. In Johnson, for example, the Court held not just that

26

it could look to state court decisions in applying the categorical approach, but that it was in fact "bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements of" the state crime of conviction at issue in that case. 130 S. Ct. at 1269; see also, e.g., Sykes v. United States, 131 S. Ct. 2267, 2271, 2275 (2011) (relying on state court case law interpreting the elements of a state crime in applying the categorical approach); James v. United States, 550 U.S. 192, 202-03 (2007) (same); Gonzales v. Duenas-Alvarez, 549 U.S. 183, 190-194 (2007) (same). And where, for example, a state court has applied its burglary statute to conduct well outside the generic definition of burglary, the Supreme Court has been willing to treat that decision as evidence that the state crime was not categorically a violent felony. See Descamps, slip op. at 3 (referring to shoplifting conduct to show coverage of state statute is broader than the generic burglary offense); see also Moncrieffe, 133 S. Ct. at 1687.[3]

---

[3] In light of this fact, perhaps what the Court was reserving in Descamps was a decidedly narrower question -- not whether state case law may ever be consulted in the course of applying the categorical approach, but rather whether judicial rulings may turn an indivisible state statute into a divisible one such as would permit the application of the modified categorical approach. But of course that question is not implicated in this case, where the panel is in agreement that (Continued)

## C.

Finally, our conclusion that defendant's Maryland resisting arrest conviction categorically qualifies under the crime-of-violence enhancement draws support from this court's treatment of the same crime in closely analogous contexts. United States v. Wardrick held that a Maryland common-law resisting arrest conviction categorically qualified as a "violent felony" within the meaning of the ACCA. 350 F.3d 446, 455 (4th Cir. 2003). And Wardrick's reasoning was confirmed by United States v. Jenkins, which held that the same common-law forerunner to the present statutory offense categorically constituted a "crime of violence" under the "career-offender enhancement" defined at U.S.S.G. § 4B1.2. 631 F.3d 680, 682-83, 685 (4th Cir. 2011). Of particular significance here, Jenkins expressly framed the question before the court as "whether the Resisting Arrest Offense . . . 'involve[s] purposeful, violent, and aggressive conduct,'" id. at 684 (brackets in original) (quoting Begay v. United States, 553 U.S. 137, 144-45 (2008)) -- ultimately answering in the affirmative, id. at 684-85.

---

the modified categorical approach does not apply to Aparicio-Soria's prior conviction.

28

To be sure, the specific textual hooks on which Wardrick and Jenkins hung their holdings were the residual clauses of the respective provisions, both of which encompass offenses that, inter alia, "involve[] conduct that presents a serious potential risk of physical injury to another." Wardrick, 350 F.3d at 454-55 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)); Jenkins, 631 F.3d at 682 (quoting U.S.S.G. § 4B1.2(a)(2)). From this foundation, the defendant attempts to argue that the Fourth Circuit implicitly denied that the force clauses of those provisions, which are identical to the Guidelines language in question here, also reach Maryland's resisting arrest offense. Compare U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (encompassing any offense that, inter alia, "has as an element the use, attempted use, or threatened use of physical force against the person of another"), with 18 U.S.C. § 924(e)(2)(B)(i) (same), and U.S.S.G. § 4B1.2(a)(1) (same).

This simply does not follow. Nothing in either opinion indicates that the court rejected the proposition that -- or even specifically considered whether -- the offense qualified under the pertinent force clause. To be sure, the fact that a crime falls within a clause referencing a serious risk of injury does not necessarily mean that the risk of injury arises from the application of violent force. Nonetheless, the two are related, the serious risk of "physical injury to another" rising

29

-- as it often does -- with the use of "physical force against the person of another."  It would thus strain credulity to treat a Maryland resisting arrest conviction differently here than in <u>Wardrick</u> and <u>Jenkins</u> absent some particular and persuasive justification for doing so.  Based on the above analysis, we find no such justification.  To cut the circuit's jurisprudence so fine would only further complicate an area of law in need of less confusion, not more.[4]

---

[4] The dissent attempts to gain support from this court's opinion in <u>United States v. Torres-Miguel</u>, 701 F.3d 165 (4th Cir. 2012), which held that a California threat offense did not categorically qualify under the crime-of-violence enhancement. <u>Torres-Miguel</u>, however, does not control the present case for a number of reasons.  First, the panel in <u>Torres-Miguel</u> was not compelled to accommodate <u>two</u> previous opinions from this court squarely holding that the <u>precise</u> crime at issue here constituted both a "violent felony" and a "crime of violence" under federal sentencing enhancements.  In this case, by contrast, we are required to consider and honor the forceful holdings in both <u>Wardrick</u> and <u>Jenkins</u> doing exactly that. Second, the panel in <u>Torres-Miguel</u> did not have before it a circumstance in which the state courts had made a concerted effort to keep the offense at issue from spreading to the non-violent conduct covered by other offenses.  Here, as the long line of state precedent discussed above makes clear, Maryland appellate courts have endeavored to ensure that the offense of resisting arrest is tailored to safeguarding individuals, especially law enforcement officers, from bodily harm.  That the offense thus requires violent force against the person of another is not only logical.  To say otherwise puts us at odds with a vast body of Maryland law.

It has become a matter of much discussion whether a particular statement made by the Supreme Court in <u>Gonzales v. Duenas-Alvarez</u> -- that "to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute . . . requires a realistic probability, not a theoretical possibility, that the State would apply its statute
(Continued)

30

IV.

While the parties have presented us with a copious helping of doctrine and precedent, much of it is far afield from the narrow question of the characterization of the particular Maryland offense at issue. It is important that courts not casually label prior offenses "crimes of violence," lest defendants face inflated sentences without the establishment of all of the elements required by an enhancement. At the same time, ignoring the plainly violent character of a predicate crime would evince a stark disregard of legislative intent. Although the categorical approach cautions courts not to delve into the factual particulars of a defendant's predicate conviction, it does not require judges to dispense sentences blindly. Imaginative hypotheticals and theoretical propositions must yield to the commanding consensus of state precedent and to sound federal sentencing principles. Given the efforts of Maryland courts to ensure that resisting arrest not apply to

---

to conduct that falls outside the generic definition of a crime," 549 U.S. 183, 193 (2007) -- applies to the analysis of "unlisted" crimes in force and residual clauses. See James v. United States, 550 U.S. 192, 208-09 (2007); Torres-Miguel, 701 F.3d at 170-71; Seay, 553 F.3d at 736-37. We believe that the reasons stated previously in this opinion are sufficient to support the panel's conclusion as to this offense without entering that complex thicket in this case.

31

varieties of passive behavior and the concrete realities with which Maryland cases have dealt year after year, we conclude that resisting arrest constitutes a "crime of violence" within the meaning of U.S.S.G. § 2L1.2(b)(1)(A)(ii).  To hold otherwise would place us at odds with reality and practicality, not a propitious place for the sober enterprise of federal sentencing to be.[5]

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

---

[5]  Our friend in dissent seems determined to find disagreement where little exists.  We agree that the categorical approach must be applied here.  Ante at 6; post at 31.  We agree that the force clause found in the enhancement at issue requires violent force.  Ante at 9-10; post at 32-33.  We agree that the categorical approach is an elements-bound rather than a conduct-based methodology.  Ante at 16-17; post at 36-38.  And we apparently agree that the federal sentencing process suffers from some measure of confusion that should not be compounded. Ante at 28-29; post at 35, 45.  The disagreement lies in the dissent's refusal to contemplate conduct discussed in prior case law even as illumination of the elements established by a powerful consensus of state appellate decisions.  The categorical approach necessarily proscribes review of the facts underlying a particular predicate offense.  There is a point, however, at which the cumulative restrictions on inquiry will send federal sentencing further into the ether, leaving it theoretically interesting, perhaps, but progressively ill-informed.

32

DAVIS, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's conclusion that the categorical approach applies here. See United States v. Gomez, 690 F.3d 194, 199 (4th Cir. 2012).[1] I disagree, however, with the majority's determination, based on its freewheeling analysis of underlying conduct in a smattering of reported cases involving the Maryland offense of resisting arrest, that Maryland's resisting arrest statute includes as an element the perpetrator's use of "violent force" and thus categorically qualifies as a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii), the applicable guideline.[2]

I

Under the categorical approach, we are restricted to looking "only to the statutory definition of the state crime and the fact of conviction to determine whether the conduct criminalized by the statute, including the most innocent conduct, qualifies as a 'crime of violence.'" United States v.

---

[1] We delayed release of our opinions in this case pending the Supreme Court's decision in Descamps v. United States, No. 11-9540 (U.S. June 20, 2013). As the majority notes, ante, at 7 & 17, the reasoning and holding in Descamps strongly affirm the correctness of Judge Floyd's trenchant analysis of "indivisible statutes" for our Court in Gomez.

[2] The above statement of the majority's holding clears away the underbrush from the majority's more oblique locution: "[W]e conclude that resisting arrest constitutes a 'crime of violence' within the meaning of U.S.S.G. § 2L1.2(b)(1)(A)(ii)." Ante, at 31–32.

Diaz-Ibarra, 522 F.3d 343, 348 (4th Cir. 2008) (citing Taylor v. United States, 495 U.S. 575, 599-601 (1990)) (emphasis added). Application note 1.B.iii to U.S.S.G. § 2L1.2(b)(1)(A)(ii) defines "crime of violence" as "any of the following offenses under federal, state, or local law: Murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses . . . statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." (emphasis added). As the majority notes, the latter part of the definition is referred to as the "force" clause and, alternatively, the "elements" clause.

In Johnson v. United States, the Supreme Court explained that "in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means violent force--that is, force capable of causing physical pain or injury to another person." 130 S. Ct. 1265, 1271 (2010) (emphasis in original).[3] Under the "force" clause of application note 1.B.iii's

---

[3] Recognizing the similarity in the language used in the Armed Career Criminal Act (the "ACCA") defining "violent felony," and the "force" clause of the Sentencing Guidelines, we have interchangeably relied on cases in the two contexts to interpret the terms within them. Gomez, 690 F.3d at 197.

34

definition of "crime of violence," and the Supreme Court's decision in Johnson, to qualify as a "crime of violence," Maryland's resisting arrest offense must have as an element the use, attempted use, or threatened use of physical force (meaning violent force--that is, force capable of causing physical pain or injury to another person) against the person of another. Id. The district court correctly concluded that it does not.[4]

In so concluding, the district court correctly relied on the Maryland Court of Appeals' decision in Nicolas v. State, 44 A.3d 396, 409 (Md. 2012), which analyzed whether second degree assault and resisting arrest convictions merge under Maryland's required evidence test. In its analysis, which of course homed in on the elements of the two offenses, the Nicolas court held that a conviction for second degree assault merges into the conviction for resisting arrest because

> [a]ll of the elements of second degree assault are included within the offense of resisting arrest. The 'force' that is required to find a defendant guilty of resisting arrest is the same as the 'offensive

---

[4] The distinguished judge who imposed the sentence in this case has been a federal judge in the District of Maryland for over 25 years: more than seven years as a magistrate judge and nearly twenty years as a district judge. Before taking the bench, she was for eight years the Chief of the Criminal Appeals Division in the Office of the Attorney General of Maryland. All of which is to say that the judge knows something about Maryland criminal law and practice, including both the historical and contemporary elements of common law and statutory criminal offenses prosecuted in Maryland courts.

35

physical contact' that is required to find a defendant guilty of the battery variety of second degree assault.

Nicolas, 44 A.3d at 409 (emphasis added). It is firmly established that Maryland second degree assault covers "any attempt to apply the least force to the person of another," Lamb v. State, 786 A.2d 783, 798 (Md. Ct. Spec. App. 2001) (quoting Ott v. State, 273 A.2d 630, 633 (Md. Ct. Spec. App. 1971)). It is therefore not categorically a crime of violence under federal sentencing enhancement provisions, as members of this Court, including the author of today's majority opinion, have long acknowledged. See United States v. Taylor, 659 F.3d 339, 345–46 (4th Cir. 2011).[5] Thus, the district court correctly concluded

---

[5] Judge Wilkinson reasoned as follows in Taylor:

> The Maryland statute prohibiting second-degree assault provides that "[a] person may not commit an assault," which in turn is defined as "the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings." Md. Code Ann., Crim. Law §§ 3–201(b),[3]–203(a). Because this definition is so broad, we have frequently recognized our inability to discern from a conviction and the statute's elements alone whether a defendant actually committed a violent felony. See United States v. Alston, 611 F.3d 219, 222–23 (4th Cir. 2010) (using modified categorical approach to determine whether Maryland second-degree assault qualifies as a violent felony); United States v. Harcum, 587 F.3d 219, 224 (4th Cir. 2009) (same).

659 F.3d at 345-46. Of course, after Descamps v. United States, No. 11-9540 (U.S. June 20, 2013), convictions under the Maryland second degree assault statute can no longer be analyzed for
(Continued)

36

that resisting arrest in Maryland is not categorically a crime of violence because the Maryland courts have "not said that the amount of force <u>necessary</u> to constitute resisting arrest is <u>greater than</u> that required for second degree assault [i.e., de minimis]." J.A. 109 (emphasis added).

Under <u>Johnson</u>, because the force necessary to support a conviction for resisting arrest in Maryland--the most innocent conduct that can qualify for the offense--includes a mere offensive touching, the Maryland statute does not have as an element the use, attempted use, or threatened use of violent force, and thus is not categorically a "crime of violence." <u>See</u> <u>Johnson</u>, 130 S. Ct. at 1271. This being so, we should vacate the judgment and remand for resentencing, which most likely will yield the same 36-month period of incarceration actually imposed. <u>See</u> <u>infra</u> p. 49 n.16.

II

The syllogism pointing to the correct outcome in this case is embarrassingly simple. How, then, does the majority get such an easy case so wrong? The answer no doubt lies in my good colleague's continued frustration with the major mess that federal sentencing enhancement law has become, <u>cf.</u> <u>United States</u>

---

federal sentencing enhancement purposes pursuant to the modified categorical approach.

v. Vann, 660 F.3d 771, 801-07 (4th Cir. 2011) (en banc)
(Wilkinson, J., concurring in the judgment),[6] coupled with a
strong desire to expand the use of the modified categorical
approach to broad statutory offenses such as Maryland's
resisting arrest offense.[7]

A

---

[6] The profusion of opinions here, however,
illustrates the obvious difficulties that courts are
experiencing in applying the residual clause of 18
U.S.C. § 924(e)(2)(B)(ii). Whether this is due to the
fondness of Congress for vague formulations or the
propensity of judges to weave intricate webs of
doctrine, I do not know. Whatever the reason, when an
inquiry becomes overly complex, the best course is to
repair to simplicity . . . .

Vann, 660 F.3d at 801 (Wilkinson, J., concurring in the
judgment); cf. United States v. Rodriguez, 711 F.3d 541, 545 n.2
(5th Cir. 2013) (en banc) (complaining that judicial "confusion
and gymnastics . . . result from the categorical and modified-
categorical approaches in their current form").

[7] See Vann, 660 F.3d at 802 (Wilkinson, J., concurring in
the judgment) ("I believe the court has no choice but to adopt
in this case a modified categorical approach."); id. at 804
("[W]hen a statute is too broad to categorically serve as an
ACCA predicate, the proper approach is not to throw up our hands
and abandon the purpose of the statute, but rather to proceed
with the modified categorical approach."). My friend is not
alone in his views. Cf. Moncrieffe v. Holder, 133 S. Ct. 1678,
1686-87 (2013) (Alito, J., dissenting) ("I would hold that the
categorical approach is not controlling where the state
conviction at issue was based on a state statute that [is overly
broad] . . . . In such situations, it is appropriate to look
beyond the elements of the state offense and to rely as well on
facts that were admitted in state court or that, taking a
realistic view, were clearly proved."). Nevertheless, to date,
those views belong solely in dissenting opinions, not majority
opinions. Cf. id.

38

The majority first relies on its harvest of cases from the government's brief to reason that "[s]ince 1950, the Maryland appellate courts have issued opinions describing the facts underlying convictions for resisting arrest," and "[e]very case, save one, demonstrates that the defendant acted in a manner involving violent force directed against . . . a law enforcement officer." Ante, at 17-18. Even if true (and it's not), so what?

The majority's attempt to support its desired outcome by recounting the actual conduct underlying some of the scores of resisting arrest cases in Maryland appellate courts entirely disregards this Court's consistent adherence to the rule that, under the categorical approach, we look only to the statutory definition of the state crime and the fact of conviction. The majority gives mere lip service to the principle that we are to engage in an elements-based inquiry, not a conduct-based one.[8]

---

[8] Even judged by its own dubious metric of counting opinions and divining the import of ambiguous language, the majority's tack is deeply flawed. Like the intermediate appellate courts of any state of more than 5 million residents, many living in abject poverty and suffering the scourge of substance abuse, the Maryland Court of Special Appeals publishes a small percentage of its annual output of opinions, particularly opinions in criminal cases. The majority cannot count, and thus refuses to contemplate, the many unknown unpublished (and indeed, effectively unreviewable) opinions in the relevant genre, which has grown over the years.

In fact, in the just-concluded legislative session, the Maryland General Assembly authorized two additional judgeships (rather than the four sought) for the 13-member court on the
(Continued)

39

See <u>Descamps</u>, slip op. at 5 ("The key, we emphasized, is elements, not facts."); <u>United States v. Romo-Villalobos</u>, 674 F.3d 1246, 1249 (11th Cir. 2012) ("While <u>Johnson</u> proscribes us from relying on state case law to determine whether a crime requires 'violent force,' it expressly directs us to look to state cases to determine the <u>elements of the state offense</u>."), <u>cert.</u> <u>denied</u>, 133 S. Ct. 248 (2012) (emphasis added).[9]

---

basis of a need summarized by the fiscal note accompanying the bill's passage. <u>See</u> Dep't of Legislative Servs., Md. Gen. Assembly, Fiscal & Policy Note for S.B. 239, 2013 Sess. at 3:

> Court of Special Appeals
>
> The judicial workload standards indicate a need for four additional judgeships. The Court of Special Appeals has not received additional judgeships since the bench was increased to 13 judges in 1977. Over that 35-year period, filings have increased by 41.9% and dispositions have increased by 37.8%. In addition, the number of opinions increased by 38.4% and the length of opinions by 137%. The caseload per judge has increased by 41.9%.

Available at http://167.102.242.144/search?client=mgaleg_default&proxystylesh eet=mgaleg_default&output=xml_no_dtd&getfields=author.title.keyw ords&filter=0&entqr=3&ie=latin1&oe=UTF-8&num=100&q=239&site=2013rs (visited May 4, 2013). <u>And</u> <u>see</u> <u>infra</u> n.11.

[9] <u>Romo-Villalobos</u> is particularly instructive here because the Eleventh Circuit was assessing a Florida resisting arrest statute that provided as follows, in pertinent part: "Whoever knowingly and willfully resists, obstructs, or opposes any officer . . . in the lawful execution of any legal duty, <u>by offering or doing violence</u> to the person of such officer . . . is guilty of a felony of the third degree . . . ." Florida Statute § 843.01. <u>See</u> 674 F.3d at 1249 (emphasis in original). (Continued)

The majority also relies, heavily but inexplicably, on the Maryland Court of Special Appeals' decision in Rich v. State, 44 A.3d 1063, 1077 (Md. Ct. Spec. App. 2012). But Rich simply held that Maryland appellate courts had sometimes used "or" when they should have used "and" to describe the resisting arrest offense because "both a refusal to submit to lawful arrest and resistance by force or threat of force are necessary to commit the offense of resisting arrest in Maryland." Id. (emphasis in original). The Rich court did not state, let alone hold, that resisting arrest required violent force. In fact, it is more accurate to say that it did the opposite by citing the Maryland Court of Appeals' holding in Nicolas that "[t]he 'force' that is required to find a defendant guilty of resisting arrest is the same as the 'offensive physical contact' that is required to find a defendant guilty of the battery variety of second degree assault" (i.e., de minimis contact). Id. (quoting Nicolas, 44 A.3d at 409) (emphasis added).[10]

The differences between the elements in the Florida resisting arrest statute and those in the Maryland resisting arrest statute are as obvious as is the majority's misguided attempt to ignore those differences in its interpretation of the latter.

[10] The Attorney General of Maryland, in an appeal to this Court challenging the district court's denial of qualified immunity to a county sheriff as to claims brought by a terminated deputy sheriff pursuant to 42 U.S.C. § 1983, recently cited and interpreted Rich as follows in his appellate brief:

(Continued)

41

By my count (assuming arguendo that counting is an accepted methodology in this appeal), in various ways the <u>Rich</u> court used the phrase "by force" sixteen times; it <u>never</u> used the phrase "by violent force." Indeed, in <u>Rich</u>, the Court of Special Appeals <u>reversed a conviction for resisting arrest</u> even where the defendant conceded (clearly on the basis of the bench and bar's then understanding of the elements of the Maryland offense of resisting arrest, i.e., that running away was sufficient) that he had indeed resisted arrest. See <u>id.</u> at 1070 n.2. The defendant's unavailing concession was entirely consistent with the view of the trial judge and the arguments of the state prosecutor. See <u>id.</u> at 1066. <u>Contrary to the majority's repeated suggestions, the reversal in <i>Rich</i> was not based on a lack of "violent force"; it was based on the absence of any showing of force whatsoever</u>. How the majority can now claim that <u>Rich</u>'s clarification that <u>force</u> (or threat of force) is a necessary

_____

> The elements of resisting arrest are (1) refusal to submit to lawful arrest and (2) resistance by force or threat of force. <u>Rich</u>, 205 Md. App. at 250. Force includes conduct such as . . .: scuffling with an officer, pulling away, struggling to get away, or going limp. <u>Id.</u> at 253 n.8, 258.

Appellant's Reply Br., <u>Durham v. Jones</u>, No. 12-2303, 2013 WL 1904669, at *13 (4th Cir. May 7, 2013). One would suppose that the Attorney General of Maryland knows something about Maryland criminal law, including Maryland case law interpreting Maryland criminal statutes.

42

element of the offense (in combination with a refusal to submit) somehow equates to a holding that violent force is what the court meant to say, is utterly beyond my comprehension.[11]

The majority further argues that "conduct underlying past convictions . . . may provide probative evidence of how the law defines the elements of the offense in question," ante, at 17, but such an inquiry into previous convictions under the statute is entirely unnecessary and inappropriate when a state's highest court has--as Maryland's has--clearly stated how it defines the element of force, and what it encompasses. Here, that definition undoubtedly covers de minimis physical contact. See Nicolas, 44 A.3d at 409; see also Williams v. State, 57 A.3d 508 (Md. Ct. Spec. App. 2012) (resisting arrest conviction based on acts not constituting violent force affirmed; citing with approval Maryland Pattern Jury Instruction, requiring jury finding merely of "force" for resisting arrest conviction), cert. granted, 62 A.3d 730 (Md. 2013). We do not need "evidence" of what the law is or "data points," see ante, at 13, to decide this case. The highest court of Maryland has told us what the law is, as the experienced district judge concluded. All we need is the ability

_____

[11] Counting again, my computer tells me that the Rich opinion contains slightly in excess of 11,000 words. It would be more than passing strange, therefore, if the majority were unable to find a few snippets of dicta which, taken out of context, might marginally support the majority's thesis.

43

to read the Court of Appeals' opinion and follow its teaching. Obviously, the majority can do the former but is, curiously, disabled from doing the latter.[12]

Manifestly, the majority misapprehends our task in this case as a search for some "generic" version of resisting arrest,

---

[12] As with the majority's apparent interpretation of words such as "struggle" and "push" as synonyms for "violent force," see ante, at 18-22, there is a distinctly Orwellian cast to the majority's disclaimer that it must not "disrespect decades of actual state court decisions," ante, at 23 n. 1, inasmuch as the majority proceeds to do exactly that by "disrespecting" the Maryland Court of Appeals' holding that "[t]he 'force' that is required to find a defendant guilty of resisting arrest is the same as the 'offensive physical contact' that is required to find a defendant guilty of the battery variety of second degree assault." Nicolas, 44 A.3d at 409. Equally Orwellian is the majority's insincere hat-tip to federalism, see ante, at 26.

In any event, as I have already explained, see n.8 supra, even on the majority's flawed "numerosity" thesis, the majority has overlooked additional Maryland precedents that wholly undermine the majority's arithmetic. See Williams, 57 A.3d 508 (resisting arrest conviction based on acts not constituting violent force affirmed; citing with approval Maryland Pattern Jury Instruction for resisting arrest), cert. granted, 62 A.3d 730 (Md. 2013); Olson v. State, 56 A.3d 576 (Md. Ct. Spec. App. 2012), cert. denied, 62 A.3d 731 (Md. 2013) (resisting arrest conviction affirmed but resentencing ordered; non-violent force described); McNeal v. State, 28 A.3d 88 (Md. Ct. Sp. App. 2011) (same), aff'd on other grounds, 44 A.3d 982 (Md. 2012). I leave to the reader's judgment whether the majority's attempts to distinguish these cases pass muster, including whether the majority's studied failure to mention jury instructions matters. See Descamps, slip op. at 20 n.5 (noting that "California's pattern jury instructions do not require the jury to find invasion of a possessory right before convicting a defendant of burglary" as part of the reason for rejecting the government's attempt to recast the broad California burglary statute into "generic burglary").

as if resisting arrest were one of the enumerated offenses in the applicable guideline. See ante, at 17 (declaring majority's need "to find the existence of an element of [resisting arrest]" and citing for support United States v. Diaz-Ibarra, 522 F.3d 343 (4th Cir. 2008), in which this Court had observed, 522 F.3d at 348, "Before we can determine whether Diaz-Ibarra's crimes constituted 'sexual abuse of a minor,' however, we must know what 'sexual abuse of a minor' means."). For a recent example of this Court's performance of that task, see Judge Wilkinson's excellent opinion in United States v. Rangel–Castaneda, 709 F.3d 373 (4th Cir. 2013) (identifying elements of "generic" crime of statutory rape).[13] But as I have explained, that is not our task here; we need only accept, as we must, the state courts'

---

[13] To be sure, the opinion in Rangel–Castaneda has not met with universal acclaim:

> This recent opinion is puzzling in that it recognizes that the simple strategy of "counting noses" will not work in all cases, acknowledges that states retain discretion to define the offense of statutory rape how they see fit, yet still relies on a state-by-state survey to define the "generic, contemporary meaning" of "statutory rape" in § 2L1.2. [Rangel–Castaneda, 709 F.3d at 379]. In our view, this inconsistent rationale makes our court's harmonizing approach all the more important.

United States v. Rodriguez, 711 F.3d 541, 550 n.13 (5th Cir. 2013) (en banc); but see id. at 574-78 (Dennis, J., dissenting) (expressing strong approval of Rangel–Castaneda).

statement of the elements of the Maryland offense of resisting arrest. Johnson, 130 S. Ct. at 1269.

Indeed, our recent opinion in United States v. Torres-Miguel, 701 F.3d 165 (4th Cir. 2012), makes this point with unmistakable clarity. There, we held that a California threat "to commit a crime that will result in death or great bodily injury" is not categorically a crime of violence, under the same provision of the Sentencing Guidelines that is at issue in this case. Id. at 168-71. We so held even though the defendant pointed to no case in which the California courts had actually applied the statute to conduct that did not involve a threat of violence. Id. at 170.

Properly viewed, therefore, analysis of the unlisted resisting arrest crime at issue here and the threat crime at issue in Torres-Miguel is materially different from that applicable to the listed offenses at issue in Diaz-Ibarra, Rangel-Castaneda, and similar cases. Neither resisting arrest nor the California threat crime outlaws a listed crime and neither has a recognizable generic definition, much less one involving "violent force." Thus, in the case at hand, as in Torres-Miguel, it is inappropriate to search for a "generic" crime as does the majority. In sum, as already mentioned, we have no better "evidence" of the elements of resisting arrest than what the Maryland Court of Appeals has declared, a

46

declaration which shows that resisting arrest does not categorically require violent force.

B

Tellingly, the majority also attempts to support its reasoning by noting that this Court has held that a Maryland resisting arrest conviction qualifies as a "violent felony" for purposes of the ACCA and the U.S.S.G. § 4B1.2 enhancements under their respective "residual clauses." This is a very inconvenient truth for the majority, however, as the majority only acknowledges, in the blink of an eye, the vastly different language used in the "force" (or "elements") clause and the "residual" clause, and it entirely overlooks the significantly different analysis[14] applied to each.

The "residual" clause under the ACCA covers offenses that "involve[] conduct that presents a serious potential risk of physical injury to another." United States v. Wardrick, 350 F.3d 446, 454 (4th Cir. 2003) (quoting 18 U.S.C. § 924 (e)(2)(B)(ii)). The "force" clause at issue here, however, encompasses any offense that "has as an element the use,

---

[14] The Supreme Court has clarified that in considering whether a prior offense falls categorically within the ACCA's residual clause, "the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." James v. United States, 550 U.S. 192, 197 (2007) (emphasis added).

attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2(b)(1) cmt. n.1(B)(iii) (emphasis added). The clauses are readily, one might say even painfully obviously, distinguishable, and the Supreme Court has given clear guidance that, unlike the "residual clause," the "force clause" is read to require "violent force." Johnson, 130 S. Ct. at 1271. The clauses are distinct for a reason. That a Maryland conviction for resisting arrest qualifies as a crime of violence under one, is in no way dispositive of whether it qualifies under the other.[15]

### III

In a case arising from a dispute over fruits and vegetables, a federal judge can call an apple an orange and a carrot a tomato if he chooses to do so. But even if he can persuade a second federal judge to agree with him, through linguistic jiu jitsu or otherwise, that apple remains an apple, and that carrot is still a carrot. Similarly, a federal judge might wish fervently that federal sentencing jurisprudence was

---

[15] In fact, as the Supreme Court itself has acknowledged, here in the immigration context, not even all residual clauses yield the same result. See Leocal v. Ashcroft, 543 U.S. 1, 10 n. 7 (2004) (distinguishing residual clause in 18 U.S.C. § 16(b), which encompasses conduct "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used," from a Guidelines' residual clause that does not mention physical force).

unfailingly coherent, always consistent with his view of "legislative intent," wholly symmetrical and enduringly cogent. Accordingly, he might wish that, in particular, the "elements clause" and the "force clause" and the "residual clause" in such laws always yield the identical outcome when they apply separately to the same underlying criminal offense. But federal sentencing jurisprudence does not meet those criteria, and those clauses do not operate with the harmony that judge might desire. And merely saying they do does not make it so. It appears that the majority's holding is the first of its kind; that innovation is not helpful.

The damage done here is not so much to Aparicio-Soria, who is well past the mid-point of his 36-month sentence and who is likely to be returned to his country of origin even before his sentence expires.[16] The damage done here is to the rule of law in this circuit, a much more lasting wound.

---

[16] It is worth noting, as well, that even if the district court had adopted the 24-to-30 month advisory guidelines range recommended in the Pre-Sentence Investigation Report and refused to apply the 16-level enhancement, judging by the district court's significant downward variance (from a 51-to-71 month range) Aparicio-Soria would likely have received the same sentence. Thus, even if we vacated the judgment and remanded for resentencing, as we should, reimposition of a 36-month sentence is the most likely result. On this record, and in view of the district court's unchallenged explanation for its sentence, a 36-month sentence would be entirely reasonable, either way.